UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. 06-cv-1773 (RBW) |
| DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR OPEN AMERICA STAY**

The defendant, the United States Department of Justice, on behalf of the Federal Bureau of Investigation, has demonstrated that the circumstances of this case warrant a stay of this litigation pursuant to 5 U.S.C. § 552(a)(6)(C) and Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976). The objections that the plaintiff, the Electronic Frontier Foundation (EFF), has raised are all variations on one theme: EFF would like the responsive documents to be released sooner. That desire may be understandable, but it does not negate the circumstances that warrant a stay according to the statute—the practical limits of the FBI's resources and the need to give fair treatment to persons and organizations who submitted their requests earlier and who are also awaiting responses.

The large volume of requests that the FBI must process and the limited resources available for processing present exceptional circumstances warranting a stay. The FBI has demonstrated reasonable progress in reducing its backlog and speeding the processing of requests, and the FBI has demonstrated due diligence in responding to FOIA requests, including the plaintiff's request. Potential media interest in matters peripherally related to the subject of

the requests does not affect the amount of processing that the plaintiff's FOIA requests will require or the resources available for doing so, and it does not affect the analysis of whether a stay is warranted under § 552(a)(6)(C)(i).  Finally, periodic status reports and the rolling release of documents will ensure that EFF receives responsive documents promptly and will allow EFF and the Court to monitor the FBI's progress in processing the request.  The Court therefore should grant the requested stay.

## BACKGROUND

Plaintiff Electronic Frontier Foundation (EFF) filed its complaint in this action under the Freedom of Information Act (FOIA) on October 17, 2006, seeking disclosure of records pertaining to the FBI's Investigative Data Warehouse (IDW), a law enforcement database "that holds hundreds of millions of records containing personal information."  Compl. for Injunctive Relief ¶ 1.  The complaint alleged that EFF had submitted two requests for records pertaining to the IDW on August 25, 2006, and September 1, 2006.  Compl. for Injunctive Relief ¶¶ 11–18.  In its answer, the defendant stated that it had received and acknowledged the September 1, 2006, request but had no record of having received the request allegedly submitted on August 25, 2006.  Answer ¶¶ 11–18.  EFF provided the FBI with a copy of that request, and the FBI agreed to treat the request as if it had been received on August 25, 2006.  Def.'s Supplemental Answer.

On April 2, 2007, in accordance with a briefing schedule agreed on by the parties and adopted by the Court, the defendant filed its motion for an Open America stay.  Mot. for Open America Stay.

On April 6, 2007, EFF sent a letter to Tasia Scolinos, Director of Public Affairs, Department of Justice, requesting expedited processing of the FOIA requests pursuant to 28 C.F.R. § 16.5(d)(1)(iv).  Pl.'s Opp'n to Def.'s Mot. for Open America Stay Ex. 1.  This

regulation, promulgated by the Department of Justice pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(II), provides that a FOIA request "will be taken out of order and given expedited treatment" if the Office of Public Affairs determines that it involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). EFF's letter argued that the requests pertaining to the Investigative Data Warehouse warrant expedited processing because the Department of Justice had earlier determined that expedited processing was warranted on another EFF request pertaining to the FBI's use of National Security Letters. The National Security Letters request is not at issue in this litigation, but EFF maintains that the Department of Justice should also grant expedited processing on the Investigative Data Warehouse requests because information related to National Security Letters may be stored in the Investigative Data Warehouse.

On April 23, 2007, EFF filed its brief in opposition to the defendant's motion. Pl.'s Opp'n to Def.'s Mot. for <u>Open America</u> Stay.

## ARGUMENT

The FBI has demonstrated exceptional circumstances justifying a stay. The FBI needs more time to respond to the plaintiff's FOIA requests because it faces a volume of FOIA requests exceeding its available resources. The FBI has shown reasonable progress in reducing its backlog and has shown diligence in responding to FOIA requests, including the plaintiff's request. Possible media interest in the FBI policies regarding National Security Letters is not relevant to this litigation. The plaintiff's requests for documents regarding National Security Letters are not at issue in this case; moreover, factors relevant to whether priority treatment is warranted are not relevant to determining whether a stay is warranted.

**I.      The FBI has demonstrated exceptional circumstances justifying a stay.**

The FBI's opening brief and supporting affidavit identified a number of major factors amounting to exceptional circumstances justifying a stay of this litigation: an increased volume of new FOIA requests; the volume of requests remaining in the FBI's backlog; short-term staffing and resource issues, some of which are related to long-term efforts to improve the FBI's processing capacity; processing deadlines imposed in other FOIA litigation; and a large volume of administrative appeals.  Mem. of Points and Authorities in Supp. of Mot. for Open America Stay at 13–19, 23–25; Def.'s Mem. Ex. 1 (Decl. of David M. Hardy) ¶¶ 5–20.

EFF argues that some of these factors contributing to the FBI's processing backlog can be characterized as part of the FBI's predictable processing workload.  Pl.'s Opp'n at 11–13.  However, the FOIA explicitly provides that even ordinary or predictable parts of an agency's workload can support a finding of exceptional circumstances when the agency is making reasonable progress in reducing its backlog.  See § 552(a)(6)(C)(ii) (providing that delays attributable to the predictable agency workload can contribute to a finding of exceptional circumstances if "the agency demonstrates reasonable progress in reducing its backlog of pending requests.").  The provision authorizing a stay of litigation, § 552(a)(6)(C), is designed to operate as a "safety valve" when an agency faces an overwhelming volume of requests exceeding its processing capacity—not just when an agency has completely eliminated its backlog of pending FOIA requests.  Open America 547 F.2d at 610; see also Ctr. for Pub. Integrity v. U.S. Dep't of State, 2006 WL 1073066 at *2 (D.D.C. 2006) (explaining § 552(a)(6)(C)(ii), and further explaining that "other circumstances in addition to FOIA request backlogs may be a basis for finding exceptional circumstances").

EFF asserts that this Court decided in Leadership Conference on Civil Rights v.

4

Gonzales, 404 F. Supp. 2d 246 (D.D.C. 2005), that ongoing processing commitments and personnel difficulties cannot amount to exceptional circumstances justifying a stay.  This is not so.  The Court in Leadership Conference recognized that even a predictable backlog of requests can justify a stay under § 552(a)(6)(C) when the agency is making reasonable progress in reducing its backlog.  The Court simply found that in the specific case before it, "defendants have not convinced the Court that they are acting with due diligence to decrease their backlog." 404 F. Supp. 2d at 259.[1]

The FBI has made substantial progress in reducing its backlog.  In the last 10 years, the FBI reduced its backlog by 90 percent in terms of the number of requests—from 16,244 requests at the end of 1996 to 1672 requests at the end of 2006.  Hardy Decl. ¶ 6.  Over the same period, the median time requests remained pending fell by 87 percent—from 1160 days at the end of 1996 to 156 days at the end of 2006.  Hardy Decl. ¶ 6.  In 2006 alone, despite a 40 percent increase from the previous year in the number of requests received, the FBI achieved a 10 percent reduction in median processing time for small-queue requests and a 16 percent reduction in median processing time for medium-queue requests.  Hardy Decl. ¶ 7.  Median processing time for large-queue requests increased, but the figure was skewed by a large number of older requests that the FBI eliminated from its backlog during 2006.  The FBI's efforts cut the number of pending large-queue requests from 122 to 51, a reduction of 58 percent.  Hardy Decl. ¶ 7.  These improvements amount to "reasonable progress" by any measure, especially in light of the FBI's ongoing efforts to continue improving its performance by establishing new facilities and

---

[1] It is worth noting that Leadership Conference on Civil Rights did not involve the FBI's Record/Information Dissemination Section.  The Court was examining the efforts of a different office within the Department of Justice, the Criminal Division Freedom of Information Act Unit. Leadership Conference on Civil Rights, 404 F. Supp. 2d at 250–51.

implementing new technology.  Thus, the fact that the strains on the FBI's processing capacity are due in part to a backlog in its ordinary workload does not preclude the Court from granting the requested Open America stay.

The FBI's capacity for processing pending requests has also been impacted by various court orders that have imposed deadlines for accelerated processing of other FOIA requests.  See Def.'s Mot. at 17–18, 24, Hardy Decl. ¶¶ 15–19.  EFF argues that these deadlines are not relevant because some of the deadlines have already passed.  Pl.'s Opp'n at 12.  EFF's view fails to take account of the practical realities of FOIA production.  When the FBI has to accelerate the processing of a FOIA request to meet a court-imposed deadline, the FBI has to shift resources away from the processing of other requests.  Hardy Decl. ¶¶ 15–20.  That means slower progress on the processing of those other requests and a corresponding delay farther down the processing queue.  The effects of this delay, of course, linger even after the deadline that initially caused the delay has passed.  Court-imposed deadlines that have already been met remain relevant to whether a stay is warranted in this litigation.  See Ctr. for Pub. Integrity, 2006 WL 1073066 at *2 (explaining that a range of circumstances that affect an agency's processing capacity, including "the number of requests for records by courts or administrative tribunals," are relevant to whether a stay is warranted.); see also H.R. Rep. No. 104-795, at 24–25, 1996 U.S.C.C.A.N. 3448, 3468 (1996) (same).

**II.     The FBI has demonstrated due diligence in processing its queues of requests and in processing EFF's request in particular.**

The FBI has demonstrated due diligence in processing all FOIA requests received, including EFF's request, on a first-in, first-out basis according to the standards laid out in Open America.  In recent years, despite an increase in the volume of requests received, the FBI has significantly reduced its backlog, accelerated the processing of requests, and implemented new

systems and processes designed to streamline the processing of requests. The FBI is working to prepare EFF's request for processing in its first-in, first-out queue system. These efforts are continuing.

The only concrete criticism EFF offers of FBI's efforts to date is that eight months have passed and EFF's request has not yet been assigned to a processing analyst for review. Pl.'s Opp'n at 14. The fact that the FBI has not yet begun processing the documents is a consequence of the fact that other requests were received earlier and the FBI, in accordance with its established queue system, is processing those earlier-received requests ahead of EFF's request. This first-in, first-out processing of requests is the hallmark of due diligence under the Act. See Open America, 547 F.2d at 616 (finding that the FBI's system of "assigning all requests on a first-in, first-out basis" complied with the Act); see also id. at 615 (explaining that the FOIA is not designed to establish a "first into court, first out of the agency" system in which the filing of a lawsuit would catapult a request to the head of the queue); see also Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice, 2005 U.S. Dist. LEXIS 18876 at *16–19 (D.D.C. 2005) (finding that the FBI's adherence to its queue system, "the real improvements made, and the FBI's stated progress" supported a finding of due diligence).

Similarly, the fact that the FBI has identified a large volume of potentially responsive documents is an indication of the FBI's diligence and good faith, not a sign that the FBI has been lax. EFF's requests do not target specific, readily identifiable documents; they target all records within several broadly defined categories of documents. See Hardy Decl. Ex. A at 2, Ex. C at 1. Producing the documents responsive to EFF's request requires the FBI to cast a broad net for potentially responsive documents and then determine which documents are responsive to EFF's request. The FBI's effort to identify all potentially responsive documents is part of its

responsibility under the statute to provide EFF with all releasable documents that fall within the scope of its request.

**III.    Potential media interest does not affect the factors relevant to determining whether a stay is appropriate, even if it may affect whether a FOIA request should be processed ahead of other requests.**

Possible media interest in the FBI's use of National Security Letters is not relevant to determining whether a stay is warranted. This case is based on FOIA requests pertaining to the Investigative Data Warehouse, an information storage and retrieval system used by the FBI. Media and public interest in policies and practices related to National Security Letters does not necessarily extend to the Investigative Data Warehouse merely because information related to National Security Letters may be stored in the Investigative Data Warehouse. Moreover, even if the IDW requests did warrant priority treatment, a grant of priority treatment would only move the IDW requests ahead of other requests; it would not preclude issuance of a stay based on the FBI's limited resources and overwhelming workload.

**A.    The determination of whether exceptional circumstances justify a stay under § 552(a)(6)(C) is not affected by factors that may justify expedited treatment under § 552(a)(6)(E).**

Under both <u>Open America</u> and § 552(a)(6), the determination of whether exceptional circumstances warrant a stay is separate from the analysis of whether a FOIA request should be given expedited treatment—that is, whether the request should be processed ahead of requests received earlier because of some exceptional need or urgency. Both analyses can ultimately affect the timing of the agency's response, but the analyses are nevertheless distinct and turn on different issues. The expedited-treatment analysis focuses on the <u>request</u>—it examines whether the nature of the request and the requester's reasons for filing it provide a reason to move the request ahead in line. The analysis of whether a stay is warranted, by contrast, focuses on the

8

agency—it examines whether "exceptional circumstances" are present in light of the agency's workload and resources, its diligence in handling the request, and the progress it has made in reducing its backlog.

The D.C. Circuit in Open America drew a clear distinction between these two analyses, describing two different "occasions" when the statute contemplates judicial intervention: "(1) when the agency was not showing due diligence in processing plaintiff's individual request or was lax overall in meeting its obligations under the Act with all available resources, and (2) when plaintiff can show a genuine need and reason for urgency in gaining access to Government records ahead of prior applicants for information." 547 F.2d at 615–16.

The statute also treats the two analyses as distinct from one another. The provisions governing stays of litigation based on exceptional circumstances faced by the agency appear in § 552(a)(6)(C). The provisions governing expedited treatment based on an urgent need on the part of the requester appear in a separate subsection, § 552(a)(6)(E). Neither subsection makes any reference to the other. Thus, a FOIA request can receive expedited treatment for its request even if the agency may be entitled to an Open America stay. The reverse is also true: an agency may be entitled to an Open America stay even when the FOIA requester demonstrates a need for expedited processing.

Thus, a finding that expedited treatment is warranted does not preclude or even weigh against issuance of an Open America stay. A court may still issue a stay under § 552(a)(6)(E) if the circumstances warrant additional time even in light of the request's expedited status. In this case, the exceptional circumstances analysis favors a stay of litigation.

    **B.**    **A determination by the Department of Justice that media interest and concerns about government integrity justified expedited processing of a separate, tangentially related FOIA request does not compel an identical finding with respect to the requests at issue in this litigation.**

The fact that the Department of Justice concluded that EFF's request regarding National Security Letters warranted expedited treatment does not compel an identical conclusion with respect to the Investigative Data Warehouse (IDW) requests. EFF has not shown that the Investigative Data Warehouse in particular has generated media interest or concern about government integrity.

EFF's request for expedited treatment relies on § 552(a)(6)(E)(i)(II), which permits expedited treatment based on factors identified by agency regulations, and a Department of Justice regulation that in turn permits expedited treatment when a request pertains to "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

A neighboring provision in the statute, § 552(a)(6)(E)(i)(I), (v)(II), authorizes expedited treatment in some cases based on "urgency to inform the public concerning . . . Federal Government activity." Courts interpreting this "urgency to inform" provision have determined that the analysis should focus narrowly on whether there is an urgency to inform the public about the specific subject of the FOIA request. These courts have found that expedited treatment is not warranted based on public interest in subjects that are merely related to the subject of the FOIA request. See Elec. Privacy Info. Ctr. v. Dep't of Def., 355 F. Supp. 2d 98, 102 (D.D.C. 2004) ("[O]nly public interest in the specific subject of a FOIA request is sufficient to weigh in favor of expedited treatment."); Al-Fayed v. CIA, 254 F. 3d 300, 310–11 (D.C. Cir. 2001) (upholding denial of expedited treatment upon concluding that "[t]here is no evidence in the record that there is substantial interest, either on the part of the American public or the media," in the particular aspect of plaintiffs' allegations that was the subject of the FOIA request (footnote omitted)).

10

Similarly, EFF is not entitled to expedited processing in this case under 28 C.F.R. § 16.5(d)(1)(iv), because EFF has not shown that there are "widespread and exceptional media interest" and "possible questions about the government's integrity which affect public confidence" with respect to the Investigative Data Warehouse in particular. EFF cannot simply rely on the fact that the Department of Justice determined that those factors were present in EFF's request pertaining to the tangentially related subject of National Security Letters.

**IV.    The FBI is prepared to provide periodic updates on the status of the processing of the plaintiff's request and to release responsive documents on a rolling basis.**

The defendant requests a stay of 71 months, but as the defendant noted in its opening brief, the FBI anticipates that the estimated time required to complete processing will be significantly reduced once the potentially responsive documents have been reviewed to determine which documents fall within the scope of EFF's requests. The FBI is prepared to begin releasing documents on a rolling basis approximately every four weeks once the first documents are ready for release. It is further prepared to file periodic status reports to keep EFF and the Court apprised of the status of the processing of EFF's request. Imposing the requested stay therefore would not obstruct the orderly release of the requested documents.

Indeed, EFF itself suggests that if the Court decides that an Open America stay is warranted, rolling releases and periodic status reports will be sufficient to serve its interests. See Pl.'s Opp'n at 15–16 (requesting that the Court, if it decides to grant additional time to the FBI, impose a scheme under which the agency would make "interim releases of documents . . . every four weeks, and submit periodic reports to the Court and plaintiff on the Bureau's progress").[2]

---

[2] The FBI intends to begin releasing responsive documents approximately every four weeks once the first documents are ready to be released. However, because that release schedule is only approximate, the defendant believes that a Court order imposing a stay should not also fix a schedule for the rolling release of documents. Such a fixed schedule would place unnecessary

11

**CONCLUSION**

      For the reasons above, the Court should grant the requested Open America stay.

Dated: May 14, 2007                         Respectfully submitted,

                                                   PETER D. KEISLER
                                                   Assistant Attorney General

                                                   JEFFREY A. TAYLOR
                                                   United States Attorney

                                                   JOHN R. TYLER (D.C. Bar No. 297713)
                                                   Senior Trial Counsel

                                                   /s/ JAMES C. LUH
                                                   JAMES C. LUH
                                                   Trial Attorney
                                                   United States Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   20 Massachusetts Ave NW
                                                   Washington DC 20530
                                                   Tel: (202) 514-4938
                                                   Fax: (202) 616-8460
                                                   E-mail: James.Luh@usdoj.gov
                                                   Attorneys for Defendant

---

burdens on the defendant and the Court and could even impede the prompt release of documents. The defendant believes that a Court order requiring status reports at 120-day intervals will allow the Court and the plaintiff to monitor the processing of the plaintiff's request without imposing an unnecessary supervisory burden on the Court or hampering the FBI's processing operations.