## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>　　　　　Plaintiff,<br>　　vs.<br><br>DEPARTMENT OF JUSTICE,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　　Civil Action No. 06-cv-1773 (RBW)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND SUPPLEMENT TO MOTION FOR OPEN AMERICA STAY

### INTRODUCTION

Plaintiff Electronic Frontier Foundation ("EFF") seeks a preliminary injunction that would force the Federal Bureau of Investigation (FBI) to accelerate the processing of the Freedom of Information Act (FOIA) requests at issue in this litigation. Pl.'s Mot. for a Prelim. Inj. (dkt. no. 10). Specifically, EFF requests an order that would require the FBI to begin production of documents within the next twenty days, to continue releasing documents in increments of 2,500 pages every 30 days, and to complete the process of identifying documents responsive to the plaintiff's requests within 60 days and submit a status report on that process within 75 days. Mem. in Supp. of Pl.'s Mot. for a Prelim. Inj. at 14–15. The plaintiff's request should be denied, because the recent decision by the Department of Justice to grant expedited treatment does not entitle EFF to an order setting a schedule for production of documents. Expedited treatment only affects the priority of a FOIA request relative to other requests; it does not impose any specific time limit for processing. The FBI is already working to complete the processing of EFF's requests as soon as practicable and has already taken appropriate steps in

accordance with the grant of expedited treatment.  The FBI is now processing EFF's requests ahead of other requests that were received earlier but have not been granted expedited treatment.

A preliminary injunction is not an appropriate mechanism for EFF to effectively cut off the Court's consideration of the defendant's motion for an <u>Open America</u> stay, which was filed on April 2, 2007, and remains pending before the Court, and to secure immediate imposition of EFF's preferred schedule for the processing of its FOIA requests.  Preliminary injunctive relief is designed to preserve the status quo so that the court can issue a meaningful decision on the merits in a case where the plaintiff shows a likelihood of success on the merits; faces imminent, irreparable harm justifying preliminary relief; shows that preliminary relief will not harm other parties; and demonstrates that preliminary injunctive relief is in the public interest.  Preliminary injunctive relief is not designed to provide a plaintiff with a means to short-circuit a motion filed by the defendant or to otherwise sidestep the ordinary FOIA litigation process.

EFF has not adequately shown a likelihood of success on the merits or that a grant of preliminary relief is necessary to prevent irreparable harm.  EFF simply misunderstands the purpose and implications of FOIA's expedited processing provisions.  A determination that a request warrants expedited processing means only that the request should be processed ahead of other requests that have not been granted expedited treatment.  A finding that a request warrants expedited treatment does not mean that the request can or should be processed within a specified time frame or on a schedule dictated by the individual or organization who made the FOIA request.  Rather, FOIA provides that expedited requests should be processed "as soon as practicable" with due regard for the agency's processing capacity and current workload and the need to ensure that requests are processed properly.  The FBI has taken appropriate steps in accordance with the grant of expedited processing and has otherwise exercised due diligence in

the processing of EFF's FOIA requests.

Disclosure of documents in accordance with FOIA indeed serves the public interest, but that public interest will be fully served by permitting the FBI to process EFF's FOIA requests without judicial supervision.  Imposing a preliminary injunction that would require the FBI to produce documents according to an accelerated schedule dictated by EFF would harm other parties, including other persons who have made FOIA requests, and would harm the public interest by disrupting the orderly processing of the FBI's FOIA workload. The Court should deny EFF's motion for a preliminary injunction.

The defendant also supplements its motion for Open America stay with updated information on the status of the processing of EFF's FOIA requests, including progress that has been made since the filing of the motion for Open America stay.  As stated earlier, the FBI has identified 72,000 pages of documents that may be responsive to EFF's FOIA requests, and it is currently reviewing those documents to determine whether they in fact fall within the scope of the plaintiff's FOIA request.  As anticipated earlier, the FBI has been able to determine that many of the documents do not fall within the scope of EFF's requests and will not have to be processed or produced.  The FBI has so far reviewed approximately 21,000 pages of documents and, out of those, has isolated 750 pages of responsive documents.  The FBI predicts that by September 28, 2007, it will have completed the processing and review of a portion of these 750 pages and will be able to make its first interim release of documents.  The defendant also anticipates that within three months, it will have completed the initial step of identifying all the documents that fall within the scope of EFF's requests.  The defendant will then be able to provide an estimate of the remaining time needed to complete the processing and release of all responsive, nonexempt documents.  The FBI is prepared to file periodic status reports at 120-day

intervals to keep the Court and the plaintiff apprised of the continued progress in the processing

of the plaintiff's requests.  While the FBI has made considerable progress in processing the

requests at issue in this litigation and other FOIA requests, FBI continues to face an immense

FOIA processing workload, including the accelerated processing under court order of two other

large-volume requests filed by EFF that are being litigated in separate cases before this Court,

and faces other strains on its processing resources.

## BACKGROUND

### I.      Statutory and Regulatory Background

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out

basis.  In 1996, Congress amended the FOIA to provide for "expedited processing" of FOIA

requests.  See Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L. No.

104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)).  Expedited treatment means that a request is

moved toward the front of an agency's processing queue, ahead of requests filed earlier that have

not been granted expedited treatment.  The FOIA provides for expedited treatment in two broad

classes of situations:  One provision specifies expedited treatment when the requester

demonstrates a "compelling need" as defined by the statute.  5 U.S.C. § 552(a)(6)(E)(i)(I); see

also id. § 552(a)(6)(E)(v) (defining "compelling need").  A second, separate provision provides

for expedited treatment when the request presents other circumstances in which the agency has

chosen to accord expedited treatment in its discretion.  Id. § 552(a)(6)(E)(i)(II) (providing for

expedited treatment "in other cases determined by the agency").

Pursuant to the second provision, in 1998, the Department of Justice issued a regulation

providing for expedited treatment of requests meeting a "special media-related standard."

Revision of Freedom of Information Act and Privacy Act Regulations and Implementation of

Electronic Freedom of Information Act Amendments of 1996, 63 Fed. Reg. 29,591, 29,592 (June

1, 1998).  This regulation extends expedited treatment in cases where the requester does not

necessarily have a "compelling need" but the request pertains to "[a] matter of widespread and

exceptional media interest in which there exist possible questions about the government's

integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv); see also 63 Fed. Reg. at

29,592 (explaining that the Department of Justice is "adopting expedited processing categories

beyond the two categories authorized by Congress").[1]

## II.    Electronic Frontier Foundation's FOIA requests and litigation

Plaintiff Electronic Frontier Foundation (EFF) filed its complaint in this action under the

Freedom of Information Act (FOIA) on October 17, 2006, seeking disclosure of records

pertaining to the FBI's Investigative Data Warehouse (IDW), a law enforcement database "that

holds hundreds of millions of records containing personal information."  Compl. for Injunctive

Relief (dkt. no. 1) ¶ 1.  The complaint alleged that EFF had submitted two requests for records

pertaining to the IDW on August 25, 2006, and September 1, 2006.  Compl. for Injunctive Relief

¶¶ 11–18.  In its answer, the defendant stated that it had received and acknowledged the

September 1, 2006, request but had no record of having received the request allegedly submitted

on August 25, 2006.  Answer (dkt. no. 3) ¶¶ 11–18.  EFF provided the FBI with a copy of that

request, and the FBI agreed to treat the request as if it had been received on August 25, 2006.

Def.'s Supplemental Answer (dkt. no. 5).

On April 2, 2007, the defendant filed a motion seeking a stay of proceedings in this

litigation pursuant to 5 U.S.C. § 552(a)(6)(C) and Open America v. Watergate Special

---

[1]The Department of Justice also issued regulations implementing the statutory provisions
providing for expedited processing in cases of compelling need. 28 C.F.R. § 16.5(d)(1)(i)–(ii).

Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976). Mot. for Open America Stay (dkt. no. 7). The defendant argued that although the FBI was exercising due diligence in processing EFF's FOIA requests, exceptional circumstances, in the form of the FBI's immense processing workload and its limited processing capacity, justified a stay of proceedings under Open America. Mem. of P. & A. in Supp. of Mot. for Open America Stay (dkt. no. 7). The FBI noted that it had identified approximately 72,000 pages of potentially responsive documents. Based on that volume, the FBI requested a stay of proceedings of 71 months. However, the FBI also noted that the volume of potentially responsive documents could be significantly reduced once the documents have been reviewed to isolate the documents that are within the scope of the plaintiff's requests. The FBI indicated that, at that point, the FBI would be able to provide the Court and the plaintiff with a revised estimate of the total time required to complete processing of the plaintiff's requests. The FBI suggested the Court impose a scheme under which the FBI would provide periodic updates to the Court and the plaintiff on the status of the processing of the requests and the estimated time needed to complete processing, starting 120 days from the date of the court's order and with continuous reports at 120-day intervals thereafter.

On April 6, 2007—after the defendant filed its motion for an Open America stay—EFF submitted an administrative request to the Department of Justice Office of Public Affairs requesting expedited processing of the FOIA requests pursuant to 28 C.F.R. § 16.5(d)(1)(iv). Pl.'s Opp'n to Def.'s Mot. for Open America Stay (dkt. no. 8) Ex. 1. This regulation, promulgated by the Department of Justice pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(II), provides that a FOIA request "will be taken out of order and given expedited treatment" if the Office of Public Affairs determines that it involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect

public confidence." 28 C.F.R. § 16.5(d)(1)(iv). EFF's request did not seek expedited processing according to the "compelling need" standard recognized in the statute.

On April 23, 2007, EFF filed a memorandum opposing the defendant's motion for an Open America stay. EFF argued that the Court should deny the Open America stay and require production of the requested documents within 60 days because the Department of Justice had earlier determined that a separate request pertaining to the FBI's use of National Security Letters warranted expedited processing. In its reply, the FBI argued that the analysis of whether a request warrants expedited processing and the analysis of whether an Open America stay is warranted are separate and distinct. Def.'s Reply Mem. in Supp. of Mot. for Open America Stay (dkt. no. 9). The FBI further argued that the fact that the Department of Justice found that the National Security Letters request was entitled to expedited treatment would not necessarily compel an identical determination with respect to EFF's separate requests related to the Investigative Data Warehouse.[2]

Meanwhile, EFF's request for expedited treatment of the Investigative Data Warehouse

---

[2]As EFF describes it, the Department of Justice stated in its Open America reply brief that the requests at issue in this litigation did not warrant expedited treatment under the applicable regulation, and has now "reversed its position." Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. at 2. This is not accurate. At the time, EFF's request for expedited treatment was still being considered by the Department of Justice Office of Public Affairs, the office responsible for making determinations under the special media-related standard that EFF invoked. The reply brief filed by the Department of Justice only contested EFF's argument that EFF was automatically entitled to court-imposed expedited treatment based solely on the Department of Justice's grant of expedited treatment on a separate, tangentially related FOIA request. See Def.'s Reply Mem. in Supp. of Mot. for Open America Stay at 11 ("EFF cannot simply rely on the fact that the Department of Justice determined that those factors were present in EFF's request pertaining to the tangentially related subject of National Security Letters."); Def.'s Reply Mem. in Supp. of Mot. for Open America Stay at 9 (section heading reading, "A determination by the Department of Justice that media interest and concerns about government integrity justified expedited processing of a separate, tangentially related FOIA request does not compel an identical finding with respect to the requests at issue in this litigation.").

requests proceeded through the administrative process within the Department of Justice. By letter dated August 3, 2007, the FBI informed EFF that its request for expedited treatment had been granted.

## III.    Current status of FBI's processing

When the parties conferred before EFF filed the instant motion for a preliminary injunction, the defendant advised EFF that it was working to prepare an update on the status of the processing of EFF's FOIA requests, based on the review and processing that had been completed since the filing of the defendant's <u>Open America</u> motion and the recent grant of expedited treatment. However, the defendant was not able to provide a full update immediately. EFF indicated that it would proceed with the filing of its motion for a preliminary injunction, and the parties agreed that the defendant could provide its update along with its opposition to the plaintiff's motion for preliminary injunction.

The defendant is now able to estimate that it will make its first interim release of documents to EFF by September 28, 2007, as explained in the attached Second Declaration of David M. Hardy (<u>hereinafter</u> Second Hardy Decl.) (attached as Ex. 1). As stated in previous filings, the FBI initially identified 72,000 pages of records potentially responsive to EFF's FOIA requests. The FBI has been reviewing those records to isolate the documents that are in fact responsive to EFF's FOIA requests and eliminate the documents that are not responsive. Since March 2007, the FBI has reviewed approximately 21,000 pages of documents; of those, it has identified 750 pages as responsive and eliminated the remainder as nonresponsive. Second Hardy Decl. ¶¶ 5–7. The FBI expects that within the next three months, it will have finished its review of the remaining 51,000 documents and thereby completed the initial step of identifying the documents that fall within the scope of EFF's request. Second Hardy Decl. ¶ 14.

Before any of these documents can be released, they must be scanned into electronic format and loaded into the FBI's paperless FOIPA Document Processing System (FDPS). Second Hardy Decl. ¶ 16. The Record/Information Dissemination Section (RIDS) Classification Unit must then review the documents page by page and line by line to determine whether the documents contain classified information, determine whether any classified information should be declassified, and to properly mark and stamp the classified information. Second Hardy Decl. ¶ 16. The FOIPA Disclosure Unit must then review the responsive documents page by page and line by line to determine whether any FOIA exemptions apply. Second Hardy Decl. ¶ 17. This process includes redaction of any exempt material, notation of the applicable exemptions, and preparation of information sheets indicating the deletion of entire pages. Second Hardy Decl. ¶ 17. During the course of this review, the FOIPA Disclosure Unit may need to consult with other government agencies about the releasability of other agencies' information contained in FBI records or refer non-FBI documents to the originating agencies for processing and direct response to EFF. Second Hardy Decl. ¶ 17. Finally, the documents proposed to be released must be reviewed by the appropriate FBI Divisions and offices which have interests in the release or denial of the information contained in the documents. Second Hardy Decl. ¶ 18.

The FBI anticipates that this extensive process will soon be completed on approximately 200 of the 750 responsive documents identified to date. Second Hardy Decl. ¶ 15. The portion of those 200 documents that is not exempt from disclosure under FOIA will be released to EFF on or before September 28, 2007. Second Hardy Decl. ¶ 15 & n.4. At the same time, the FBI will process the remaining 550 pages of documents so far identified as responsive. Second Hardy Decl. ¶ 19. The FBI anticipates continuing to make interim releases as it completes review and processing of the remaining pages. The FBI will also continue with the review and

processing of the remaining 51,000 pages that have not yet been identified as either responsive or nonresponsive. Second Hardy Decl. ¶ 19. The FBI anticipates that the initial step of isolating responsive documents will be complete within three months, after which the FBI will be able to provide an estimate of the time required to complete the review and processing of all the documents identified as responsive. Second Hardy Decl. ¶ 14. Furthermore, the FBI is prepared to file status reports at 120-day intervals to provide the Court and EFF with updated information on the continued progress of the review and processing of the documents.

A number of circumstances prevent the FBI from completing processing on a schedule dictated by EFF. First, as detailed in earlier filings, the FBI's Record/Information Dissemination Section faces a number of temporary resource and staffing limitations, some of which are related to FBI's long-term efforts to increase its processing capacity. Second Hardy Decl. ¶ 20. Second, despite its recent progress in reducing its FOIA processing backlog, the FBI remains burdened by a large FOIA processing workload and has recently had to shift processing resources to meet several court-imposed deadlines for processing. Second Hardy Decl. ¶ 21; see also Mot. for Open America Stay Ex. 1 (Decl. of David M. Hardy) ¶¶ 15–19. Indeed, the FBI has recently had to direct much of its processing capacity to meeting court-imposed schedules for accelerated processing of two other FOIA requests filed by EFF. Second Hardy Decl. ¶ 21–22. In Electronic Frontier Foundation v. Department of Justice, No. 07-cv-656 (D.D.C.), which concerns an EFF request related to the FBI's use of National Security Letters, the FBI has identified 100,000 pages of potentially responsive documents, and the FBI has been ordered to process 2500 pages each month. Second Hardy Decl. ¶ 22. In Electronic Frontier Foundation v. Department of Justice, No. 06-cv-1708 (D.D.C.), which concerns an EFF request related to the DCS 3000 system, the FBI has been ordered to process 800 pages each month. Second Hardy

Decl. ¶ 22.

## ARGUMENT

### I.    Standards for Issuance of a Preliminary Injunction

Preliminary injunctive relief is an extraordinary remedy, and the power to issue such an

injunction "should be sparingly exercised." <u>Dorfmann v. Boozer</u>, 414 F.2d 1168, 1173 (D.C.

Cir. 1969) (quotation marks omitted).  For a plaintiff to prevail on a motion for preliminary

relief, it must demonstrate: (1) a substantial likelihood of success on the merits; (2) that it would

suffer irreparable injury if the injunction is not granted; (3) that an injunction would not

substantially injure other interested (nonmoving) parties; and (4) that the public interest would

be furthered by the injunction.  <u>CityFed Fin. Corp. v. Office of Thrift Supervision</u>, 58 F.3d 738,

746 (D.C. Cir. 1995); <u>see also, e.g.</u>, <u>Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.</u>,

559 F.2d 841, 842–43 (D.C. Cir. 1977); <u>Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n</u>,

259 F.2d 921, 925 (D.C. Cir. 1958).  The court must find that these four factors together justify

the drastic intervention of a preliminary injunction.  <u>See</u> <u>CityFed Fin. Corp.</u>, 58 F.3d at 747.

### II.    Preliminary relief is generally not appropriate in FOIA cases.

Preliminary injunctive relief is generally not appropriate in FOIA cases, for a number of

reasons.[3]  Indeed, EFF itself "recognizes that preliminary injunctive relief is not the norm in

---

[3]This Court has repeatedly denied requests for such relief.  <u>See, e.g.</u>, <u>Al-Fayed v. CIA</u>, 2000 WL 34342564 at *6 (D.D.C. 2000) (finding that "upon consideration of the parties' arguments, the statutory and regulatory context, and the applicable case law," emergency relief was not warranted despite the agency's delay in responding to FOIA requests); <u>Judicial Watch v. U.S. Dep't of Justice</u>, slip op., No. 00-1396  (D.D.C., June 27, 2000) (attached as Ex. 2) (denying plaintiff's emergency motion for expedited treatment seeking to compel defendant to respond to plaintiff's FOIA request); <u>Assassination Archives & Research Ctr., Inc. v. CIA</u>, No. 88-2600, 1988 U.S. Dist. LEXIS 18606 at *1 (D.D.C., Sept. 29, 1988) (rejecting motion for preliminary injunction asking the Court to order expedited processing of a FOIA request).  The Court has granted preliminary injunctive relief in some FOIA cases, <u>see, e.g.</u>, <u>Elec. Privacy Info. Ctr. v. Dep't of Justice</u>, 416 F. Supp. 2d 30, 35 (D.D.C. 2006) (finding preliminary injunction analysis

FOIA cases."  Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. at 11.

FOIA establishes its own specialized procedural framework controlling the processing of FOIA requests and procedures for FOIA litigation.  See, e.g., 5 U.S.C. § 552(a)(3)(A) (providing that a FOIA request must reasonably describe the records sought and must be filed in accordance with published rules and procedures); id. § 552(a)(4)(C) (requiring responsive filing within thirty days of service of a complaint); id. § 552(a)(6)(C) (providing for stay of litigation when agency is faced with exceptional circumstances).  Courts should not casually sidestep this statutory framework through issuance of preliminary relief, especially in cases that present no emergency in a conventional sense.  Cf. Electronic Frontier Foundation v. Department of Justice, No. 07-cv-0656 (JDB) at 3–4 (June 15, 2007) (attached as Ex. B to Pl.'s Mot. for Prelim. Inj.) (imposing an accelerated production schedule on the defendant, but noting, "[c]ertainly, the vehicle of a preliminary injunction motion is an imperfect means to address what is, in essence, a scheduling issue. Moreover, the possibility of overuse, or even abuse, of preliminary injunction requests in the FOIA scheduling context is obvious.").

In addition, the traditional purpose of a preliminary injunction is to preserve the status quo so that the court can issue a meaningful decision on the merits.  Accordingly, this Court has stated that a plaintiff must meet a higher standard to secure mandatory injunctive relief that "would alter, rather than preserve, the status quo by commanding some positive act."  Nat'l Conf. on Ministry to the Armed Forces v. James, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) (quoting Columbia Hospital for Women Foundation, Inc. v. Bank of Tokyo-Mitsubishi Ltd., 15 F. Supp.

---

appropriate); NRDC v. Dep't of Energy, 191 F. Supp. 2d 41, 43–44 (D.D.C. 2002) (granting expedited motion for release of responsive records), but as explained below, even if preliminary injunctive relief is warranted in some FOIA cases, the circumstances of this case do not warrant such relief.

2d 1, 4 (D.D.C. 1997)).  An order compelling accelerated processing of a FOIA request would not merely preserve the status quo but would force specific action by the defendants.

Similarly, because preliminary injunctive relief is not intended to provide plaintiffs with a means to bypass the litigation process and achieve rapid victory, "a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits." Dorfmann v. Boozer, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969).  The FBI already recognizes that EFF has submitted valid FOIA requests for documents and is entitled to release of nonexempt documents; at the moment, the only dispute in this litigation relates to the timing of the FBI's processing and release of documents.  A grant of the preliminary injunction that EFF requests would give EFF a complete victory by precluding consideration of the defendant's motion for an Open America stay.[4]

There is also no indication in this case of undue delay in the processing of plaintiff's requests.  To the contrary, the FBI has gathered potentially responsive documents and has continued diligently reviewing and processing the documents. See Second Hardy Decl. ¶¶ 12–19.

### III.    EFF fails to show a likelihood of success on the merits, because the expedited processing provisions of FOIA and the associated Department of Justice regulations do not prescribe any specific timeline for processing of FOIA requests granted expedited treatment, and the FBI is working to complete processing "as soon as practicable."

EFF has not demonstrated a likelihood of success on the merits, because the agency's grant of expedited treatment does not by itself justify a court order fixing a compressed schedule

---

[4]EFF argues that a preliminary injunction would not afford EFF with complete victory, because EFF might later challenge, and the Court might later examine, the adequacy of the FBI's production of documents. See Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. at 15 n.5.  But the only matters currently at issue in this litigation relate to the timing of the FBI's response.

for the processing of the FOIA requests.  The FOIA only requires an agency to complete processing of an expedited request "as soon as practicable," and it specifically provides that a court may grant additional time to process a FOIA request when an agency demonstrates exceptional circumstances justifying such a stay.

EFF acknowledges that preliminary injunctive relief should not be granted routinely in FOIA cases, but it asserts that this case is exceptional because the Department of Justice has granted expedited treatment to the plaintiff's FOIA requests and because the 20-day statutory period for responding to FOIA requests has expired. See Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. at 11.  This interpretation is based on a misunderstanding of the meaning and implications of expedited processing.

The expedited processing provisions of FOIA do not dictate a specific, compressed schedule for the processing of expedited requests; rather, the statute directs an agency to "process <u>as soon as practicable</u> any request for records to which the agency has granted expedited processing."  5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added); <u>see also</u> 28 C.F.R. § 16.5(d)(1)(4) ("If a request for expedited treatment is granted, the request shall be given priority and shall be processed as soon as practicable.").  Requests granted expedited treatment are placed ahead of other requests that have not been granted expedited treatment, but a grant of expedited treatment is not an assurance of immediate processing.  Multiple requests may be granted expedited treatment at any given time, and there is no direct limit or check on the number of requests or the proportion of total requests granted expedited processing.

A Senate Judiciary Committee report explained the expedited processing provisions as follows:

> Once . . . the request for expedited access is granted, the agency must then proceed to process that request "as soon as practicable." No specific number of

> days for compliance is imposed by the bill since, depending upon the complexity
> of the request, the time needed for compliance may vary. The goal is not to get
> the request for expedited access processed within a specific time frame, but to
> give the request priority for processing more quickly than otherwise would occur.

Electronic Freedom of Information Improvement Act of 1995, S. Rep. No. 104-272 at 18 (1996),

available at 1996 WL 262861.  Accordingly, this Court has recognized that when expedited

treatment is warranted, the statute requires that documents be released "as soon as practicable."

See, e.g., ACLU v. Dep't of Justice, 321 F. Supp. 2d 24, 38 (D.D.C. 2004) (reversing agency's

denial of expedited processing and ordering the agency to "process plaintiffs' request . . .

consistent with 5 U.S.C. § 552(a)(6)(E)(iii) and 28 C.F.R. § 16.5(d)(1)(4) ('as soon as

practicable')").

     Indeed, in its letter requesting expedited treatment from the Office of Public Affairs, EFF

did not suggest that it believed that expedited treatment would entitle EFF to have its requests

processed according to any specific schedule.  EFF simply requested "expedited processing" as

contemplated by FOIA and the applicable DOJ regulations.  Request for Expedited FOIA

Processing (letter from David L. Sobel, Senior Counsel, Electronic Frontier Foundation, to Tasia

Scolinos, Director of Public Affairs, Office of Public Affairs, Department of Justice) (attached as

Ex. 1 to Pl.'s Opp'n to Def.'s Mot. for Open America Stay).

     Nevertheless, EFF now contends that the Department of Justice's grant of expedited

processing requires the agency to complete processing within 20 days of the date of each request,

and failure to meet that deadline justifies entry of a preliminary injunction.  Mem. in Supp. of

Pl.'s Mot. for Prelim. Inj. at 7.  EFF relies primarily on Electronic Privacy Information Center v.

Department of Justice (EPIC), 416 F. Supp. 2d 30 (D.D.C. 2006), modified, No. 06-0096

(D.D.C. Mar. 24, 2006).  As discussed above, EPIC is in tension with the FOIA statutory and

regulatory framework and the general principles governing issuance of preliminary relief.  Cf.

Apotex, Inc. v. FDA, 393 F.3d 210, 218 (D.C. Cir. 2004) (district court decisions are not binding

in later district court cases).  Moreover, the decision in EPIC was later modified to permit the

defendant more time to produce the documents.  See EPIC, No. 06-0096 (D.D.C. Mar. 24, 2006).

       In addition, the circumstances of EPIC were very different from the circumstances of this

case.  In the first place, in EPIC, the grant of expedited treatment included a finding that the

requester had demonstrated an "urgency to inform the public" about government activities.

EPIC, 416 F. Supp. 2d at 41 (the Department of Justice's finding of "urgency to inform the

public" militated in favor of a finding of irreparable harm).  In this case, however, EFF has not

made or even attempted to make a showing of compelling need or "urgency to inform the public"

under the statutory expedited processing provisions of FOIA, 5 U.S.C. § 552(a)(6)(E)(i)(I), (v)

(expedited processing in cases of "compelling need," including "urgency to inform the public"),

or the regulation implementing the "urgency to inform the public" standard, 28 C.F.R.

§ 16.5(d)(1)(ii).  Instead, EFF's request for expedited processing was based exclusively on the

special media-related standard that the Department of Justice established by regulation.  See 5

U.S.C. § 552(a)(6)(E)(i)(II) (expedited processing "in other cases determined by the agency");

28 C.F.R. § 16.5(d)(1)(iv) (expedited processing based on exceptional media interest).

       In addition, while FOIA generally requires agencies to process requests within 20 days, 5

U.S.C. § 552(a)(6)(A), that statutory deadline is subject to an important proviso:  a court may

grant a stay if the agency demonstrates exceptional circumstances justifying a stay and due

diligence in processing the request.  Id. § 552(a)(6)(C); Open Am. v. Watergate Special

Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976).  In EPIC, the court determined that the

agency's failure to meet the 20-day deadline justified a preliminary injunction because the

agency had not even attempted to show that exceptional circumstances justified such a stay of

proceedings, known as an <u>Open America</u> stay.  <u>EPIC</u>, 416 F. Supp. 2d at 38 ("DOJ has neither

met the twenty-day deadline, <u>nor has it suggested that exceptional circumstances exist to extend

that deadline</u>." (emphasis added)).  In this case, however, the defendant has filed a motion for an

<u>Open America</u> stay supported by abundant evidence of exceptional circumstances justifying a

stay.

 As the defendant has explained in previous filings, a grant of expedited treatment does

not preclude the court from issuing such an <u>Open America</u> stay.  <u>See</u> Def.'s Reply Mem. in

Supp. of Mot. for <u>Open America</u> Stay at 8–9.  The provisions governing stays of litigation based

on exceptional circumstances appear in § 552(a)(6)(C), and the provisions governing expedited

treatment appear in a separate subsection, § 552(a)(6)(E).  Neither provision absolutely takes

precedence over the other.  An <u>Open America</u> stay may still be warranted based on exceptional

circumstances faced by the agency, even when the agency has determined that the request

warrants expedited treatment and therefore should be placed ahead of other requests.[5]

 The obstacles that make it impracticable to process EFF's requests on EFF's desired

schedule relate to the amount and intensity of work that FOIA processing entails and the

limitations of and burdens on the FBI's processing capacity—not to any failure to respect the

grant of expedited treatment.  The FBI has appropriately implemented the grant of expedited

treatment by processing EFF's requests ahead of other FOIA requests that were received earlier.

A grant of expedited treatment does not eliminate any of the time-consuming and labor-intensive

steps required to complete processing:  the review of potentially responsive documents to isolate

---

 [5]Indeed, the district court in <u>EPIC</u>, after issuing the preliminary injunction, later modified
that injunction to impose deadlines that reflected the time needed by the agency to process and
release the documents.  <u>See</u> <u>EPIC</u>, No. 06-0096 (D.D.C. Mar. 24, 2006) (order granting in part
and denying in part motion for relief from order and modifying the relief ordered) (attached as
Ex. 3).

the documents falling within the scope of the plaintiff's FOIA requests; the scanning of the documents into the electronic FOIPA Document Processing System (FDPS); the classification and declassification review; the review to determine whether documents are exempt from disclosure; and the review of the documents proposed to be released by the appropriate FBI Divisions and offices. The FBI has already made considerable progress in isolating 750 pages of documents out of 21,000 pages reviewed so far, and it expects to release a portion of those documents by September 28, 2007. The FBI expects that within three months, it will have isolated all the documents responsive to EFF's request and will be able to provide an estimate of the time required to complete processing and release of all responsive, nonexempt documents. The FBI is prepared to file periodic status reports to keep the Court and the plaintiff apprised of further progress in the processing of EFF's FOIA requests. However, it is simply not practicable for the FBI to complete the process according to the schedule that EFF desires.

Accordingly, the agency's grant of expedited treatment does not by itself entitle EFF to a court order imposing a schedule for processing.

**IV.    EFF's claim of irreparable harm is insufficient because it is based only on speculation about the value of the information to be released and the impact of a delay in the release of that information.**

EFF also has not established that the preliminary injunction it requests is necessary to prevent irreparable harm. EFF speculates that denial of a preliminary injunction could work irreparable harm if the information it seeks were of significant value now but would be useless if produced later. This is nothing more than speculation, and it is not enough to support issuance of a preliminary injunction.

A plaintiff seeking a preliminary injunction must show that such relief is necessary to prevent imminent, irreparable harm that is both "certain and great." Wisc. Gas Co. v. FERC,

758 F.2d 669, 674 (D.C. Cir. 1985); see also Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297–98 (D.C. Cir. 2006). In this case, the focus of the irreparable harm inquiry is whether EFF will suffer harm if the requested documents are not released on the schedule that EFF requests but are instead released as soon as practicable given FBI's processing capacity.

Neither of the two cases EFF has cited, Payne Enterprises v. United States, 837 F.2d 486 (D.C. Cir. 1988), and EPIC, 416 F. Supp. 2d at 30, held that a delay in processing always amounts to irreparable harm in FOIA cases.[6] The court in each case merely found that delay amounted to irreparable harm based on the specific circumstances of the case. See Payne Enters., 837 F.2d at 490 (noting that delays in compliance were "frustrating, costly, and detrimental to Payne's business" because Payne's clients needed up-to-date information to prepare bids for government contracts); EPIC, 416 F. Supp. 2d at 40–41 ("[T]ime is necessarily of the essence in cases like this . . . ." (emphasis added)).

EFF's claim that "time is of the essence," Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. at 7, 9, is nothing more than speculation and rhetoric. EFF has not shown that the documents it has requested contain crucial information that will be valuable to EFF. Presumably, the very reason EFF has requested the documents is because EFF does not know what the documents contain. Even assuming the documents contain valuable information, portions of those documents could well be withheld from disclosure pursuant to FOIA exemptions. See The Nation Magazine v. Dep't of State, 805 F. Supp. 68, 74 (D.D.C. 1992) (finding that the plaintiffs failed to show irreparable harm because "[e]ven if this Court were to direct the speed up of the processing of

---

[6]The other cases EFF relies on are from other circuits and, more importantly, are not FOIA cases. See United States v. BNS, Inc., 858 F.2d 456 (9th Cir. 1988) (examining the grant of a preliminary injunction preventing consummation of a hostile takeover); Martin-Marietta Corp. v. Bendix Corp., 690 F.2d 558 (6th Cir. 1982) (examining the denial of a preliminary injunction against enforcement of Michigan state securities laws).

their requests, [the plaintiffs] have not shown at this time that they are entitled to <u>release</u> of the documents they seek."). And even if some of the requested documents turn out to be both valuable to EFF and subject to disclosure under FOIA, EFF has not shown that delays in the processing of the FOIA requests will significantly diminish the value of the information. Indeed, EFF's requests appear to target material whose value, if any, would remain intact over time: documentation of "categories of individuals" covered by the IDW, "categories of records" contained in the IDW, or "criteria for inclusion of information in the IDW"; records concerning FBI determinations regarding the applicability of the Privacy Act of 1974 or federal records requirements; records concerning data management procedures; privacy impact statements; and results of audits. It is difficult to imagine why the value of such information to EFF would diminish substantially, or at all, before the FBI is able to complete processing of the requests.

EFF's chain of conjecture does not amount to a "certain," "great," and irreparable harm justifying the drastic remedy of preliminary injunctive relief, <u>Wisc. Gas Co.</u>, 758 F.2d at 674.

## V.  An order requiring the FBI to process EFF's FOIA requests at a rate beyond its current sustainable capacity would harm other FOIA requesters.

Issuance of a preliminary injunction would also harm third parties not before the court, namely, other parties who have made FOIA requests. An order forcing the FBI to produce documents at a rate beyond its present sustainable capacity—especially when the FBI is already working beyond that capacity—would work lasting harm to the FBI's processing efforts, harm that would persist even after the FBI completed processing of the EFF's requests. <u>Cf.</u> <u>The Nation Magazine v. Dep't of State</u>, 805 F. Supp. 68, 74 (D.D.C. 1992) (finding that a temporary restraining order would likely harm third parties in light of the defendants' limited FOIA processing resources and the court's load of cases seeking judicial review of FOIA activities).

The FBI has already provided abundant factual information about its FOIA processing

efforts and the various strains and limitations on its FOIA processing capacity. EFF has not

disputed the accuracy of any of that information, nor has it suggested any ways in which the FBI

could speed up processing with its current available resources in a manner that is sustainable

over time and is consistent with the FOIA statutory and regulatory framework. All that EFF has

offered are general assertions that the FBI's efforts have been inadequate and that the documents

should be produced faster. Such assertions are not enough to establish that an order would not

harm other parties.

VI.    **An order requiring the FBI to accelerate processing of the plaintiff's FOIA requests**
       **would not serve the public interest.**

EFF argues that a preliminary injunction would serve the public interest because it would

do nothing more than require the FBI to release documents in accordance with its statutory and

regulatory duties. But the FBI has already acknowledged that EFF is entitled to the release of

the documents it has requested, subject to any applicable FOIA exemptions, and the FBI is

working assiduously to process EFF's FOIA requests. So the issue is not whether the release of

the documents would serve the public interest; such a release will occur even if the Court denies

a preliminary injunction. Rather, EFF must specifically show that ordering the FBI to accelerate

the processing of its FOIA requests would serve the public interest.

EFF has not shown that such an order will serve the public interest. As explained above,

EFF's claim that the requested information is both extremely valuable and extremely perishable

is based on nothing more than speculation. See supra section IV. And as explained above, an

order compelling the FBI to further accelerate processing would harm the public interest by

forcing the FBI to work beyond its current sustainable capacity and thereby disrupting the FBI's

processing efforts over the long term. Cf. The Nation Magazine v. Dep't of State, 805 F. Supp.

68, 74 (D.D.C. 1992) (finding that a temporary restraining order would harm the public interest

by disrupting the "orderly, fair, and efficient administration of the FOIA").

## CONCLUSION

For the reasons above, EFF's motion for a preliminary injunction should be denied.

Dated: September 4, 2007                    Respectfully submitted,

                                            PETER D. KEISLER
                                            Assistant Attorney General

                                            JEFFREY A. TAYLOR
                                            United States Attorney

                                            JOHN R. TYLER (D.C. Bar No. 297713)
                                            Senior Trial Counsel

                                            /s/ JAMES C. LUH
                                            JAMES C. LUH
                                            Trial Attorney
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Ave NW
                                            Washington DC 20530
                                            Tel: (202) 514-4938
                                            Fax: (202) 616-8460
                                            E-mail: James.Luh@usdoj.gov
                                            Attorneys for Defendant

Civil Action No. 06-cv-1773 (RBW)

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:06-cv-01773-RBW |
| ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination

Section ("RIDS"), Records Management Division ("RMD"), at the Federal Bureau of

Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position

since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 21, 2002, I was

the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had

direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals,

and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy

Judge Advocate at various commands and routinely worked with FOIA matters. I am

also an attorney who has been licensed to practice law in the state of Texas since

1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately

208 employees who staff a total of ten (10) units and a field operational service center

unit whose collective mission is to effectively plan, develop, direct, and manage

responses to requests for access to FBI records and information pursuant to the FOIA;

Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General, and

FBI policies and procedures; judicial decisions; and Presidential and Congressional

directives. My responsibilities also include the review of FBI information for

classification purposes as mandated by Executive Order 12958, as amended,[1] and the

preparation of affidavits/declarations in support of Exemption 1 claims asserted under

the FOIA.[2] I have been designated by the Attorney General of the United States as an

original classification authority and a declassification authority pursuant to Executive

Order 12958, as amended, §§ 1.3 and 3.1. The statements contained in this

declaration are based upon my personal knowledge, upon information provided to me

in my official capacity, and upon conclusions and determinations reached and made in

accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures

followed by the FBI in responding to requests for information from its files pursuant to

the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. §

552a. Specifically, I am aware of the treatment which has been afforded the FOIA

requests of plaintiff, the Electronic Frontier Foundation ("EFF"), for specific types of FBI

documents related to the FBI's Investigative Data Warehouse ("IDW"), a database of

---

[1]  60 Fed. Reg. 19825 (1995) and 69 Fed. Reg. 15315 (2003).

[2]  5 U.S.C. § 552 (b)(1).

659 million records, including terrorist watch lists, intelligence cable and financial transactions, that is culled from more than 50 government agency sources in addition to the FBI. More specifically, plaintiff's August 25, 2006 FOIA request seeks access to FBI records pertaining to the "listing, describing or discussing" of the categories of individuals covered by the IDW; the "listing, describing or discussing" of the categories of records in the IDW; the "listing, describing or discussing" of the criteria for inclusion of information in the IDW; the "describing or discussing" of any FBI determination that the IDW is, or is not, subject to the requirements of the Privacy Act of 1974; and the "describing or discussing" of any FBI determination that the IDW is, or is not, subject to federal records retention requirements, including the filing of Standard Form (SF) 115, which is titled "Request for Records Disposition Authority." In addition, plaintiff's September 1, 2006, FOIA request seeks access to FBI records which describe "data expungement, restriction or correction procedures" for the IDW; all privacy impact statements created for the IDW; and all results of audits conducted to ensure proper operation of the IDW.

(4)    This second declaration supplements, and hereby incorporates, my previous declaration submitted in this case and dated March 28, 2007 ("First Hardy Declaration"), which provided the Court and plaintiff with an overview of the FBI's RIDS and the current backlog of FOIA/Privacy Act requests and pending FOIA/Privacy Act litigation, an explanation of the FBI's Central Records System ("CRS"), a chronology of plaintiff's FOIA requests, a description of the search for and voluminous number of records potentially responsive to plaintiff's FOIA requests, and an explanation for the delays associated with the FBI's processing of plaintiff's FOIA requests. In addition, the First

Hardy Declaration was also submitted to the Court in support of a stay of proceedings for approximately 71 months (three months for the case to rise to the top of the backlog queue and 68 months for processing) or no later than February 28, 2013, to allow the FBI to complete the processing and release of documents responsive to plaintiff's requests. This estimated length of time to complete the processing of plaintiff's FOIA requests was based on the volume of approximately 72,000 pages that the FBI had identified as potentially responsive as of March 28, 2007.

(5)    However, since that date, the FBI has reviewed approximately 21,000 pages of potentially responsive records. Of those, 750 pages have been identified as responsive, and the remainder have been eliminated as being not responsive to plaintiff's FOIA requests.

(6)    The purpose of this second declaration is to provide the Court and plaintiff with the current status of the review of records that are potentially responsive to plaintiff's FOIA requests, the current status of the classification review and FOIA processing of records which have been identified as responsive to plaintiff's FOIA requests, and an explanation of the delays associated with the FBI's processing of documents responsive to plaintiff's FOIA requests.

(7)    There is no way of accurately predicting how many of the remaining 51,000 pages of documents are likely to be responsive. For the reasons which will be discussed below in greater detail, the FBI is also submitting this declaration in support of a continued stay of proceedings. As was anticipated earlier, (See First Hardy Declaration ¶ 4 ), based in part on the elimination of pages that have been identified as not responsive to plaintiff's request, the FBI anticipates that the time required to

complete processing will be significantly shorter than the initial estimate of 71 months. The FBI anticipates that an interim release of documents to plaintiff will be made by September 28, 2007.

## PLAINTIFF'S REQUEST FOR EXPEDITED TREATMENT
## OF ITS FOIA REQUESTS

(8)    By letter dated April 6, 2007, addressed to the Department of Justice ("DOJ"), Office of Public Affairs ("OPA"), plaintiff requested that OPA grant expedited treatment for the processing of its FOIA requests concerning the IDW pursuant to 28 C.F.R. § 16.5(d)(1)(iv) inasmuch as the IDW is "[a] matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affects public confidence." (See Exhibit D.)

(9)    Pursuant to this letter, OPA considered the merits of plaintiff's request for expedited treatment of its FOIA requests concerning the IDW and concluded that the subject matter of its FOIA requests met the above-cited criteria, and therefore granted plaintiff's request for expedited processing.

(10)    By letter dated August 3, 2007, addressed to plaintiff, the FBI advised plaintiff that OPA had granted expedited treatment for the processing of its FOIA requests concerning the IDW pursuant to the provisions of 28 C.F.R. § 16.5(d)(1)(iv). (See Exhibit E.)

(11)    As a result of OPA's granting of expedited processing, the plaintiff's FOIA requests have been moved ahead of all earlier FOIA requests to the FBI that have not received expedited processing. Based on the dates of plaintiff's August 25, 2006 and September 1, 2006  FOIA requests, there are currently eight (8) FOIA requests that would have been processed before plaintiff's requests if plaintiff's requests had not

been granted expedited treatment. Plaintiff's requests are now being processed ahead of those earlier requests.

## THE CURRENT STATUS OF THE REVIEW OF DOCUMENTS WHICH ARE POTENTIALLY RESPONSIVE TO PLAINTIFF'S FOIA REQUESTS

(12)     As described in Paragraphs 35 through 38 of the First Hardy Declaration, the FBI conducted a wide-ranging search for FBIHQ records which could potentially contain information which is responsive to the specific categories of records sought by plaintiff. As a result of these search efforts, a total of approximately 72,000 pages of potentially responsive records were located and forwarded to RIDS personnel. As of the date of the First Hardy Declaration and continuing since that date, RIDS personnel in the Litigation Support Unit ("LSU") have been reviewing this enormous volume of potentially responsive records in order to determine whether or not the submitted records are within the scope of plaintiff's FOIA requests. (See **First Hardy Declaration,** ¶¶ **35-38.**)

(13)     Currently, RIDS has reviewed 21,000 out of the total of 72,000 pages of potentially responsive records to determine what records are within the scope of plaintiff's FOIA requests. This review has identified approximately 750 pages of documents which are responsive to plaintiff's FOIA requests, as well as eliminated approximately 20,250 pages of non-responsive documents.

(14)     During this review process, RIDS personnel have been hampered by the complexity of some documents which are highly technical in nature. In addition, the review process has been delayed because of the inability of RIDS personnel to access some of the records on compact discs due to special encoding by the originator of

˘6˘

these records - the FBI's Security Division.[3]  These two unique elements of plaintiff's

FOIA requests have required extensive consultation with personnel of the FBI's

Security Division, the FBI's Office of the General Counsel, the FBI's Information

Technology Operations Division, and the Office of the Program Manager of IDW.

Nevertheless, the FBI anticipates that the scoping of the remaining potentially

responsive documents will be completed within the next three months.

### THE CURRENT STATUS OF THE PROCESSING OF DOCUMENTS WHICH ARE RESPONSIVE TO PLAINTIFF'S FOIA REQUESTS

(15)    As detailed in Paragraph 12 supra, this ongoing review of potentially

responsive documents has to date resulted in the identification of approximately 750

pages of documents as containing information which is responsive to the specific

categories of records sought by plaintiff.  Approximately 550 pages of these responsive

documents are currently being scanned into an electronic format and uploaded into the

computerized FOIA/Privacy Act ("FOIPA") Document Processing System ("FDPS") for

classification review and FOIA processing by RIDS personnel.  In addition, the

classification review and FOIA processing of approximately 200 pages of responsive

records is nearing completion and it is anticipated that these processed records will be

released to plaintiff on or before September 28, 2007.[4]

---

[3]  This inability of RIDS personnel to access these electronic records due to special
encoding has recently been ameliorated by personnel of the Security Division, who
have removed the encoding of most of these records, thus allowing RIDS personnel to
print paper copies of these records.

[4]  It should be noted that the approximate page count of 200 pages represents the total
number of pages reviewed and processed for the first interim release and not
necessarily the number of pages which will actually be released to plaintiff.

(16)    As detailed in Paragraphs 21 through 24, 38, and 39 of the First Hardy

Declaration, there are several time-consuming steps that are necessary to complete the

processing of plaintiff's FOIA requests. (See First Hardy Declaration, ¶¶ 21-24, 38 and

39.) The first step is to scan in the records which have been determined to be

responsive into an electronic format and upload these records into FDPS.  The next

step is to forward these documents to the Classification Unit for

classification/declassification review of these documents pursuant to Executive Order

12958, as amended. · This classification and/or declassification review involves a page-

by-page, line-by-line review of the responsive documents to determine which, if any,

information is currently classified and/or should be declassified pursuant to Executive

Order 12958, as amended, and to properly mark and stamp the classified information at

the appropriate classification level.

(17)    After completion of the classification/declassification review, the

documents will then be returned to the FOIPA Disclosure Unit at FBIHQ for processing

of these documents pursuant to the FOIA.  This FOIA processing involves a page-by-

page, line-by-line review of the responsive documents to determine which, if any, FOIA

exemptions may apply.  This FOIA processing also includes the redaction of any

exempt material and the notation of the applicable FOIA exemption(s) in the margin of

each page and/or preparation of deleted page information sheets when pages are

withheld in their entireties.  During the course of their review, the FOIPA Disclosure Unit

may need to consult with other United States Government agencies for their

determination as to the releasability of the other agency's information contained within

these FBI records, or refer non-FBI documents to those originating agencies for

processing and direct response to plaintiff. The FOIPA Disclosure Unit at FBIHQ will ensure that FOIA exemptions have been applied properly, no releasable material has been withheld, no material meriting protection has been released, all necessary classification reviews have been completed, and other United States Government agency information and/or entire documents originating with other United States Government agencies have been referred for either consultation and return to the FBI or direct response to plaintiff.

(18)    The last step in the processing of these responsive documents will be to have the proposed release of documents reviewed by the appropriate FBI Divisions and offices at FBIHQ who have equities in the release and/or withholding of the information in these documents.   In this matter, these FBIHQ Divisions and offices include the Security Division, the Office of General Counsel, the Information Technology Operations Division and the Office of the Program Manager of IDW. After the completion of these reviews by other FBI entities, the documents will then be printed and mailed to plaintiff.

(19)    As stated in Paragraph 15, supra, the classification review and FOIA processing of approximately 200 pages of responsive documents is nearing completion and will soon be forwarded to the appropriate FBI entities for their review. The FBI anticipates that these processed records will be released to plaintiff on or before September 28, 2007. Concurrently, the FBI will process the remaining 550 pages of records already determined to be responsive to plaintiff's requests, scope the remaining 51,000 pages of potentially responsive records, and process from these 51,000 pages, all records that are determined to be responsive to plaintiff's FOIA requests.

## Personnel Shortages and Other Pending FOIA Litigation

(20)    As explained in Paragraphs 11 through 14 of the First Hardy Declaration,

RIDS is currently undergoing a phased physical relocation of personnel and resources

from FBIHQ to an interim facility in Frederick County, Virginia. An unfortunate side

effect of this relocation has been the loss of experienced RIDS personnel due to

retirement or separation from the FBI inasmuch as these employees have decided not

to transfer to the new facility. The next scheduled relocation of RIDS personnel at

FBIHQ will be in December of 2007, and the final relocation of the remaining RIDS

personnel at FBIHQ is scheduled for the summer of 2008. Although the FBI is engaged

in aggressive and intense recruitment and hiring efforts in the Frederick County, Virginia

area, it is anticipated that the trend in loss of experienced personnel due to retirement

and separation from the FBI will persist in the foreseeable future. (See **First Hardy**

**Declaration, ¶¶ 11-14.**)

(21)    As explained in Paragraphs 15 through 19 of the First Hardy Declaration,

simultaneously with this personnel and resource drain, RIDS has experienced a

significant increase in its FOIA litigation workload, including two district court cases

brought by EFF. Each of the other two EFF litigations have resulted in strict court-

imposed deadlines, as I will describe in further detail below. (See **First Hardy**

**Declaration, ¶¶ 15-19.**)

(22)    In Electronic Frontier Foundation v. Department of Justice, et al., Civ. A.

No.

07-CV-00656 (D.D.C.), the FBI has been ordered by the Court to process 2,500 pages

of documents every month for release to plaintiff pursuant to its FOIA request for

records concerning the FBI's use of National Security Letters. This litigation involves an estimated 100,000 pages of potentially responsive documents. The FBI has made two releases to date, with the next release due September 5, 2007. In <u>Electronic Frontier Foundation v. Department of Justice, et al.</u>, Civ. A. No. 06-CV-1708 (D.D.C.), the FBI has been ordered by the Court to process 800 pages every month for release to plaintiff pursuant to its FOIA request for records concerning the DCS 3000 System. Approximately 9,883 pages have been identified as potentially responsive and the FBI has made four releases to date, with the next release due September 24, 2007.

(23)    Plaintiff is not alone is suing the FBI. The FBI is actively defending numerous other lawsuits in district courts and appellate courts across the country, each with its own set of deadlines. At this time, the FBI is defending 104 FOIA/Privacy Act lawsuits nationwide.

(24)    In order to comply with all of these demands, RIDS has realigned and made a substantial commitment of its personnel resources to address these judicially-imposed deadlines. However, despite its attempts to realign and commit personnel and resources, RIDS continues to experience the effects of a drain in the number of its experienced personnel while it moves forward with its relocation to Frederick County, Virginia. Thus, despite these best efforts, there are only a limited number of RIDS personnel available to work on all of the other FOIA/PA requests and litigation, including this FOIA litigation.

(25)    The FBI takes its responsibilities with regard to the administration of the FOIA/Privacy Act program very seriously, and all reasonable efforts are being made to comply with the statutory deadlines. Regrettably, compliance with these deadlines is

often not possible. However, the FBI has made tremendous strides in the allocation of limited personnel resources in order to comply with all of its court-ordered deadlines as well as the reduction of its backlog of pending FOIA/Privacy Act requests over time. With regard to plaintiff's FOIA requests for specific records concerning the IDW, the FBI has made substantial progress in the review and elimination of a significant number of documents as being not responsive to EFF's FOIA requests and has also nearly completed the processing of the first interim release of responsive documents.

(26)    For the above reasons, the FBI submits this declaration in support of its request for a stay of proceedings.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits D and E attached hereto are true and correct copies.

Executed this _____ day of September, 2007.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.


˘12˘

# Exhibit D



**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

April 6, 2007

<u>**BY FACSIMILE – (202) 514-5331**</u>

Tasia Scolinos
Director of Public Affairs
Office of Public Affairs
U.S. Department of Justice
Room 1128
950 Pennsylvania Avenue, NW.
Washington DC 20530-0001

<u>**REQUEST FOR EXPEDITED FOIA PROCESSING**</u>

Dear Ms. Scolinos:

This is a request for expedited processing of a Freedom of Information Act ("FOIA")
request, made pursuant to 28 CFR 16.5(d)(1). By letters dated August 25 and September
1, 2006 (attached hereto as Exhibits 1 & 2), the Electronic Frontier Foundation ("EFF")
submitted FOIA requests to the Federal Bureau of Investigation ("FBI") seeking the
disclosure of FBI records concerning the Investigative Data Warehouse ("IDW").

I believe these pending requests meet the criteria for expedited processing under 28 CFR
16.5(d)(1)(iv), as they concern "[a] matter of widespread and exceptional media interest
in which there exist possible questions about the government's integrity which affect
public confidence." 28 CFR 16.5(d)(1)(iv). You recently concluded that another request
EFF submitted to the FBI, concerning the Bureau's use of National Security Letters
("NSLs"), warranted expedited processing on this ground. *See* Exhibit 3, attached hereto.
As I explain below, the factors EFF cited in support of the expedited processing of our
NSL request in our letter to you dated March 12, 2007 (which I incorporate herein by
reference) are equally applicable to our pending IDW requests.

In his report of March 9, 2007, the Department's Inspector General documented
numerous instances of the FBI's "improper or illegal use" of NSL authority. Of
particular relevance to this request, the Inspector General revealed that "NSL data is
periodically downloaded . . . into the FBI's Investigative Data Warehouse (IDW), a
centralized repository for intelligence and investigative data with advanced search
capabilities." U.S. Department of Justice, Office of the Inspector General, "A Review of
the Federal Bureau of Investigation's Use of National Security Letters" (March 2007), at
30. The Bureau's continuing retention in the IDW of the personal data improperly or
illegally obtained through abuses of the NSL process is obviously central to the
undisputed questions about "integrity which affect public confidence." Indeed, during
the Senate Judiciary Committee's hearing on the issue on March 21, Sen. Feingold had
the following exchange with the Inspector General:

Director of Public Affairs
April 6, 2007
Page two

Sen. Feingold:  In your October 2006 memo to the attorney general on the Justice Department's top management and performance challenges for fiscal year 2006, you caution that the Patriot Act granted the FBI broad new authorities to collect information, including the authority, quote, "To review and store information about American citizens and others in the United States about whom the FBI has no individualized suspicion of illegal activity," unquote.

You cautioned nearly six months ago that the department and the FBI need to be particularly mindful about the potential for abuse of these types of powers.

First, I want to establish some basic facts alluded to in your memo. Under the existing NSL statutes, it is possible to obtain information, including full credit reports, about people who are entirely innocent of any wrongdoing. Isn't that correct?

Mr. Fine: Well, it is possible, yes, as a result of the investigation there's no finding of anything and that they are innocent. Yes.

Sen. Feingold: And the FBI's policy is that it will retain all information obtained via NSLs indefinitely, often in databases like the Investigative Data Warehouse that are available to thousands of investigators. Is that correct?

Mr. Fine: Yes.

Sen. Feingold: Now, with regard to your caution about the potential for abuse of these powers, DOJ responded in November 2006 that the FBI agrees and that it is, quote, "aggressively vigilant in guarding against any abuse," unquote.

Would you agree with that statement, that the FBI has been aggressively vigilant in guarding against abuses?

Mr. Fine: I would agree that the FBI was not aggressively vigilant in terms of guarding against the problems we found, yes.

Indeed, the Department has recognized that the questions surrounding the retention of NSL data in the IDW are serious and require further examination. In a "Fact Sheet" issued on March 20, the Department announced "new oversight of the use and retention

Director of Public Affairs
April 6, 2007
Page three

of NSL-derived information" and the creation of a "working group" to "examine how
NSL-derived information is used and retained by the FBI." Fact Sheet: Department Of
Justice Corrective Actions on the FBI's Use of National Security Letters (March 20,
2007) (attached hereto as Exhibit 4).

In summary, it is clear that recent events warrant the expedited processing of EFF's
requests for information concerning the policies and procedures governing the inclusion
and use of information in the Investigative Data Warehouse. As such, we hereby request
such expedited treatment.

Thank you for your consideration of this request. As applicable Department regulations
provide, I will anticipate your determination within ten (10) calendar days. 28 CFR
16.5(d)(1).

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best
of my knowledge and belief.


David L. Sobel
Senior Counsel


attachments

cc: (w/o attachments)

        James C. Luh
        Trial Attorney
        U.S. Department of Justice
        Civil Division, Federal Programs Branch

# Exhibit E



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

August 3, 2007

David L. Sobel, Esq.
Senior Counsel
Electronic Frontier Foundation
Suite 650
1875 Connecticut Avenue, NW
Washington, DC    20009

Re: FOIPA Request No. 1058805

Dear Mr. Sobel:

        This letter is in response to your request to the
U.S. Department of Justice ("DOJ"), Office of Public Affairs
("OPA"), for expedition of your Freedom of Information Act
("FOIA") request to FBI Headquarters ("FBIHQ") for specific
records concerning the FBI's Investigative Data Warehouse
("IDW"). In your initial FOIA request letter dated August 25,
2006, and your supplemental FOIA request letter dated
September 1, 2006, the Electronic Frontier Foundation ("EFF")
sought access to specific records concerning the categories of
individuals and records included in the IDW; the criteria for
inclusion of information in the IDW; records concerning any FBI
determinations that the IDW is, or is not, subject to the
requirements of the Privacy Act of 1974 and federal records
retention requirements; records concerning data expungement,
restriction or correction procedures for the IDW; all privacy
impact statements created for the IDW; and all results of audits
conducted to ensure proper operation of the IDW.

        The EFF requested that OPA grant expedited treatment
for the processing of this FOIA request concerning the IDW
pursuant to 28 C.F.R. §16.5(d)(1)(iv) inasmuch as the IDW is
"[a] matter of widespread and exceptional media interest in which
there exists possible questions about the government's integrity
which affects public confidence." We have been advised that the
Director of OPA has concluded that the subject matter of your
FOIA request meets this criteria and therefore your request for
expedited processing should be granted.

Please be advised that we have located and are currently processing FBIHQ records which are responsive to your FOIA request for release to you. In addition, we are continuing our review of the large number of FBIHQ records identified as potentially responsive to your request. As we process those records determined to be responsive, we will release them to you as soon as practicable.

Sincerely,

David M. Hardy
Section Chief
Record/Information Dissemination
    Section
Records Management Division

2

Civil Action No. 06-cv-1773 (RBW)

EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 00-1396 (JR) |
| | : | |
| UNITED STATES DEPARTMENT OF | : | **FILED** |
| JUSTICE, *et al.*, | : | |
| | : | JUN 2 7 2000 |
| Defendant. | : | |

<u>ORDER</u>

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Upon consideration of plaintiff's "emergency motion for expedited treatment to, in part, compel defendant to respond to plaintiff's Freedom of Information Act request,"[1] it is this 27th day of June, 2000,

**ORDERED** that the motion is **denied**. The Freedom of Information Act was not designed and does not operate as a vehicle to provide immediate and continuing access to government records through litigation.

"Congress wished to reserve the role of the courts for two occasions, (1) when the agency was not showing due diligence in processing plaintiff's individual request or was lax overall in meeting its obligations under the Act with all available resources, and (2) when plaintiff can show a genuine need and reason for urgency in gaining access to Government records ahead of prior applicants for information." <u>Open America, Inc. v.</u>

---

[1]    This case was reassigned to the undersigned judge on June 26, 2000, as related to No. 2000cv0723. <u>See</u> LCvR 40.5(c).

( N )                                                                 Ẋ

<u>Watergate Special Prosecution Force</u>, 547 F.2d 606, 615-16 (D.C. Cir. 1976). The cases finding "emergency" conditions in a FOIA context have been few, and the claims to "emergency" status in those cases were different from and more focused than the claim presented by this plaintiff.[2] <u>See</u> <u>Exner v. FBI</u>, 443 F. Supp. 1349, 1353 (S.D. Cal. 1978) (allegation of exposure to harm from organized crime figures); <u>Cleaver v. Kelley</u>, 427 F. Supp. 80, 81 (D.D.C. 1976) (plaintiff facing criminal charges carrying possible death penalty in state court).

The Department of Justice is required to act upon a request for expedited access within ten calendar days of receipt by the FOIA office if a "person primarily engaged in disseminating information" can demonstrate that there is an "urgency to inform the public concerning actual or alleged Federal Government activity," 28 C.F.R. § 16.5(d). This plaintiff did not make such a request.

_____
JAMES ROBERTSON
United States District Judge

---

[2]    The motion reveals some confusion about the identity, or the role, of the actual plaintiff. The stated "emergency" is that a motion is to be filed tomorrow in the Eleventh Circuit (by Judicial Watch? by Larry Klayman, Esq?) on behalf of Lazaro Gonzales.

Copies to:

Larry Klayman                      Ben Cooper
501 School Street, S.W.            U.S. Department of Justice
Suite 725                         Civil Division
Washington, D.C. 20024            901 E Street, N.W., Room 905
                                  Washington, D.C. 20044
Counsel for Plaintiff
                                  Counsel for Defendant

Civil Action No. 06-cv-1773 (RBW)

EXHIBIT 3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,**<br><br>                    **Plaintiff,**<br><br>          **v.**<br><br>**DEPARTMENT OF JUSTICE,**<br><br>                    **Defendant.** | **Civil Action 06-00096 (HHK)** |

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION, et al.,**<br><br>                    **Plaintiffs,**<br><br>          **v.**<br><br>**DEPARTMENT OF JUSTICE,**<br><br>                    **Defendant.** | **Civil Action 06-00214 (HHK)** |

## ORDER

It is this 24th day of March, 2006, hereby

**ORDERED** that the expedited motion, filed by the Department of Justice ("DOJ"),

seeking relief from the court's February 16, 2006 order [#13] is granted in part and denied in

part; and it is further

**ORDERED** that DOJ's Office of Intelligence and Policy Review shall have an additional

60 days to complete the processing of the plaintiff Electronic Privacy Information Center's

("EPIC's") December 16, 2005 FOIA request, as measured from March 8, 2006    the original

deadline imposed by the court's February 16, 2006 order; and it is further

**ORDERED** that DOJ's Office of Legal Counsel shall have an additional 120 days to complete the processing of EPIC's December 16, 2005 FOIA request, as measured from March 8, 2006 the original deadline imposed by the court's February 16, 2006 order; and it is further

**ORDERED** that no *Vaughn* index of any responsive classified documents or declaration supporting the withholding of either responsive classified or unclassified documents shall be required before the point at which a dispositive motion is filed; and it is further

**ORDERED** that the clerk of the court shall schedule a status hearing sixty days from the date of this order, or as soon thereafter as the business of the court permits.


Henry H. Kennedy, Jr.
United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. 06-cv-1773 (RBW) |
| DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |

## <u>ORDER</u>

Upon consideration of Plaintiff's Motion for a Preliminary Injunction and Defendant's

opposition thereto, it is hereby

ORDERED that Plaintiff's motion for a preliminary injunction is DENIED.

Dated:

_____
REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE