# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER      :
FOUNDATION,                :
                              :          Civil Action No. 06-1773
           Plaintiff,       :
                              :
      v.                   :
                              :
DEPARTMENT OF JUSTICE,    :
                              :
          Defendant.     :
_____ :

## Memorandum Opinion

The plaintiff, Electronic Frontier Foundation ("EFF"), brings this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C § 552 (2006), against the United States Department of Justice ("DOJ"), seeking the release of agency records from the Federal Bureau of Investigation ("FBI") concerning the FBI's Investigative Data Warehouse ("Data Warehouse").[1] Complaint ("Compl.") ¶ 1. Currently before the Court is the defendant's motion for an Open America stay of the proceedings pursuant to 5 U.S.C. § 552(a)(6)(C) and Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976). Specifically, the defendant requests that the Court allow the FBI "approximately 71 months, or until February of 2013, to process [the] plaintiff's FOIA requests and complete the release of responsive records." Memorandum of Points and Authorities in Support of Motion for Open America Stay ("Def.'s Mem.") at 2. As grounds for its request, the defendant maintains that "[t]here is no way of

---

[1] The Data Warehouse is "a database of 659 million records, including terrorist watch lists, intelligence cable and financial transactions, that is culled from more than 50 government agency sources in addition to the FBI." Memorandum of Points and Authorities in Support of Motion for Open America Stay ("Def.'s Mem."), Exhibit ("Ex.") 1 (Declaration of David M. Hardy) ("Hardy Decl. I") at 2.

accurately predicting how many of the [] documents are likely to be responsive [to the plaintiff's request]." Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Preliminary Injunction and Supplement to Motion for <u>Open America</u> Stay ("Def.'s Supp. Mem."), Exhibit ("Ex.") 1 (Second Declaration of David M. Hardy) ("Hardy Decl. II") at 4. However, the defendant anticipates that "before processing begins, it will be able to significantly reduce the total time required to complete processing by eliminating a significant volume of documents that are not responsive to the plaintiff's requests and will not need to be processed."[2] Def.'s Mem. at 2.

On April 23, 2007, the plaintiff filed its opposition to the defendant's motion for the <u>Open America</u> Stay, arguing that the request for a stay should be denied because, <u>inter alia</u>, the information requested is of "widespread and exceptional media interest" resulting from "the FBI's [purported] abuse of NSL [National Security Letter] authority" and the revelation that "personal information obtained through the issuance of NSLs has been incorporated into the [Data Warehouse]." Plaintiff's Opposition to Defendant's Motion for <u>Open America</u> Stay ("Pl.'s Opp'n") at 5.[3] The plaintiff reasons that these set of circumstances raise "possible questions about the government's integrity which effect public confidence," thereby giving greater urgency to its FOIA request. <u>Id.</u> at 5 (quoting Pl.'s Opp'n, Ex. 2 (Letter from Marcia Hofman, EFF Staff Attorney, to Tasia Scolinos, Director of Public Affairs, Office of Public Affairs ("OPA"), Mar. 12, 2007). Further, the plaintiff argues that the "defendant has failed to show that it should be

---

[2] The defendant would appear to have a good faith basis for its belief, given the number of documents already found to be non-responsive. <u>See</u> Defendant's January 25, 2008 Status Report ("Def.'s First Stat. Rpt."), Ex. 1 (Third Declaration of David M. Hardy) ("Hardy Decl. III") at 7.

[3] The plaintiff notes that National Security Letter authority was "granted to the [FBI] under the [Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001], Pub. L. No. 107-56, 115 Stat. 272 (2001)." Pl.'s Opp'n at 4.

granted the wildly excessive stay that it seeks" because the "defendant has failed to cite the kind of 'exceptional circumstances' sufficient to satisfy the well-established Open America standard as construed in this Circuit." Id. at 11,13.

For the following reasons, the Court will grant the defendant's request for an Open America stay of these proceedings until August 1, 2008.

## I. Background

A. Procedural History

On August 25 and September 1, 2006, the plaintiff requested, pursuant to FOIA, specific agency records from the FBI concerning the Data Warehouse.[4] Compl. ¶ 4. The search effort to retrieve documents potentially responsive to the plaintiff's FOIA requests disclosed approximately 72,000 pages of documents. Def.'s Mem. at 11. The plaintiff's requests were being processed on a "first-in first-out basis" in conjunction with other FOIA requests of similar size.[5] Id. at 11-12. After the FBI failed to timely respond to the plaintiff's FOIA requests, the plaintiff initiated this action on October 17, 2006.[6] Pl.'s Opp'n at 4. The parties then submitted an agreed upon briefing schedule for the filing of dispositive motions and responses thereto, along with a status report. Feb. 23, 2007 Joint Status Report and Proposed Schedule. In accordance with the parties' proposed briefing schedule, the Court issued a Scheduling Order on March 27, 2007.

---

[4] The two requests were combined by the defendant for ease of processing. Defendant's May 27, 2008 Status Report ("Def.'s Second Stat. Rpt."), Attachment ("Attach.") (Fourth Declaration of David M. Hardy) ("Hardy Decl. IV") at 2 n.3.

[5] The FBI processes FOIA requests pursuant to a "three queue" system, which is based on the number of pages responsive to the requests. Def.'s Mem. at 5-6. The requests are processed within each queue on a first-in first-out basis. Def.'s Mem. at 5.

[6] 5 U.S.C. § 552(a)(6)(A) requires agencies to respond to a FOIA request within twenty working-days.

On April 2, 2007, in light of the large number of pages located as potentially responsive to the plaintiff's FOIA requests and a recent decrease in the number of personnel available to process the FBI's FOIA requests, the defendant filed the motion which is the subject of this opinion, requesting a stay of these proceedings pursuant to 5 U.S.C. § 552(a)(6)(C) (2006) and Open America, 547 F.2d 605.  Def.'s Mem. at 2-3.   Two days after the defendant filed its motion for the stay, the plaintiff submitted a formal request to the DOJ's OPA for expedited processing of its pending FOIA request pursuant to 28 C.F.R. § 16.5(d)(1)(iv).[7]  Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction ("Pl.'s P.I. Mem.") at 2.  Though initially resistant, the OPA ultimately granted the plaintiff's request for expedited processing because it concluded that the Data Warehouse "is a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affects public confidence."  Id. (quoting Pl.'s P.I. Mem., Ex. A (Letter from David M. Hardy, Chief, FBI's Records/Information Dissemination Section, Records Management Division to David L. Sobel, EFF's Senior Counsel, Aug. 3, 2007 (quoting 28 C.F.R. § 16.5(d)(1)(iv))).  As a result of this decision, "the plaintiff's  FOIA requests [were] moved ahead of all earlier FOIA requests to the FBI that ha[d] not received expedited processing."[8]  Def.'s Supp. Mem, Ex. 1 (Hardy Decl. II) at 5.

---

[7]  28 C.F.R. § 16.5(d)(1)(iv) provides that a FOIA request "will be taken out of order and given expedited treatment" if the OPA determines that it involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect the public confidence."

[8]  Based on the date when the plaintiff's requests were submitted, "eight (8) FOIA requests that would have been processed before [the] plaintiff's requests . . . ."  Def.'s Supp. Mem., Ex. 1 (Hardy Decl. II) at 5-6.  The expedited treatment moved the processing of the plaintiff's requests ahead of the other requests grouped with the plaintiff's request due to the number of potential responsive documents.  Id. at 6.

B.  The FBI's Processing of the Plaintiff's FOIA Request

The FBI's Record/Information Dissemination Section ("Record Section") processes all FOIA requests submitted to the FBI.  Def.'s Mem. at 3.  To streamline the processing of such requests, the Record Section presently is undergoing relocation of its personnel and resources from FBI Headquarters in Washington, D.C. to a new facility in Frederick County, Virginia. Defendant's January 25, 2008 Status Report ("Def.'s First Stat. Rpt."), Ex. 1 (Third Declaration of David M. Hardy) (Hardy Decl. III") at 9.  Unfortunately, many of the Record Section's senior personnel chose to retire or separate from the FBI rather than relocate to the new facility.  Id. Consequently, the section suffered a loss of several experienced employees.  Id.  Thus, while the FBI is actively recruiting new employees, the Record Section currently is operating at about two-thirds of its funded staffing level.  Id.  This depleted workforce is responsible for processing all new and backlogged FOIA requests,[9] reviewing administratively appealed requests, and meeting court imposed deadlines secured by requesters in FOIA litigation.[10]  Id. at 9-10.

The defendant represents that the FBI is doing everything possible to expedite the processing of the plaintiff's request, but due to the lack of experienced personnel, pending litigation, and the complex review procedure specific to the plaintiff's request, the processing cannot be completed as  expeditiously as the plaintiff desires.  Id. at 10-11.  The defendant provides the following explanation for why processing the plaintiff's request is not a simple task:

[T]here  are  several  time-consuming  steps  that  are  necessary  to

---

[9]  The FBI receives an average of 1,200 new FOIA requests each month and, as of December 2006, the backlogged requests numbered over 1,600.  Def.'s Mem. at 14.

[10]  The plaintiff also is a party in two of these FOIA actions.  Def.'s First Stat. Rpt., Ex. 1 (Hardy Decl. III) at 10.

complete the processing of plaintiff's FOIA requests. The first step is to scan in the records which have been determined to be responsive into an electronic format and upload these records into the FDPS [computerized FOIA Document Processing System]. The next step is to forward these documents to DCU [Declassification Unit] for classification and/or declassification review of these documents pursuant to Executive Order 12958, as amended. This classification and/or declassification review involves a page-by-page, line-by-line review of the responsive documents to determine which, if any, information is currently classified and/or should be declassified pursuant to Executive Order 12958, as amended, and to properly mark and stamp the classified information at the appropriate classification level. After completion of the classification/declassification review, the documents are then to be returned to [the] FOIPA Disclosure Unit 3 for processing of these documents pursuant to the FOIA. This FOIA processing involves a page-by-page line-by-line review of the responsive documents to determine which, if any, FOIA exemptions may apply. This FOIA processing also includes the redaction of any exempt material and the notation of the applicable FOIA exemption(s) in the margin of each page and/or preparation of deleted page information sheets when pages are withheld in their entireties. During the course of their review, [the] FOIPA Disclosure Unit 3 may need to consult with other United States Government agencies for their determination as to the releasability of the other agency's information contained within these FBI records, or refer non-FBI documents to those originating agencies for processing and direct response to plaintiff . . . . The last step in the processing of these responsive documents will be to have the proposed release of documents reviewed by the appropriate FBI Divisions and offices at FBIHQ who have equities in the release and/or withholding of the information in these documents. After the completion of these reviews by the other FBI entities, the documents will then be printed and mailed to plaintiff.

Def.'s First Stat. Rpt., Ex. 1. (Hardy Decl. III) at 8-9. The defendant also notes that as of the

January 25, 2008:

[The FBI's Records Section] personnel have reviewed a total of approximately 22,072 pages of potentially responsive documents to determine which records were within the scope of plaintiff's FOIA requests. This scoping review identified a total of 943 pages of documents which were responsive to plaintiff's FOIA requests, as well as eliminated 21,129 pages of non-responsive documents. Therefore approximately 49,928 pages of potentially responsive

documents remain to be reviewed by RIDS personnel.

Id. at 7.

Despite these representations made by the defendant, the plaintiff contends that a stay is inappropriate, especially in relation to requests that have been granted expedited consideration. Reply in Support of Plaintiff's Motion for A Preliminary Injunction and Response to Defendant's Supplement to Motion for Open America Stay ("Pl.'s P.I. Resp.") at 1-4. As proof that the amount of time requested by the defendant is unwarranted, the plaintiff posits that the defendant's 68-month estimation to process the plaintiff's requests is exaggerated as evidenced by the rate at which the defendant was able to process the first 21,000 documents. Id. at 2-3. Furthermore, the plaintiff posits that since the first 21,000 documents were processed so quickly, the defendant should be able to process the remaining documents "in less than four months." Id. at 3.

## II. Standard of Review

The FOIA expressly provides that "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i). The District of Columbia Circuit first interpreted Section 552(a)(6)(C) in Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976), and the body of case law generated by this interpretation sets the parameters for what is known as an Open America stay. In Open America, the Circuit Court held:

> "[E]xceptional circumstances exist" when an agency . . . is deluged with a volume
> of requests for information vastly in excess of that anticipated by Congress, when the
> existing resources are inadequate to deal with the volume of such requests within the
> time limits of subsection (6)(A), and when the agency can show that it "is exercising
> due diligence" in processing the requests. In such situation, in the language of

7

subsection (6)(C), "the court may retain jurisdiction and allow the agency additional time to complete its review of the records."

Open America, 547 F.2d at 616 (quoting 5 U.S.C. § 552(a)(6)(C)(i)). The Circuit Court's interpretation has evolved into four conditions that must be satisfied to warrant granting an Open America stay: "(1) when an agency is burdened with an unanticipated number of FOIA requests; and (2) when agency resources are inadequate to process the requests within the time limits set forth in the statute; and (3) when the agency shows that it is exercising due diligence in processing the requests; and (4) the agency shows reasonable progress in reducing its backlog of requests." Elec. Frontier Found. v. U.S. Dep't of Justice, 517 F. Supp. 2d 111, 120 (D.D.C. 2007) (internal quotations and citations omitted) (emphasis in original); see Edmonds v. FBI, 417 F.3d 1319, 1321 (D.C. Cir. 2005) (employing first three factors and citing Open America); Summers v. U.S. Dep't of Justice, 925 F.2d 450, 452 n.2 (D.C. Cir. 1991) (same); 5 U.S.C. §§ 552(a)(6)(C)(i)-(ii) (under section (a)(6)(C)(ii) an agency must "demonstrate[] reasonable progress in reducing its backlog of pending requests").

### III. Analysis

The defendant contends that an Open America stay is warranted because even though the FBI Record Section is exercising due diligence in processing the plaintiff's FOIA requests, exceptional circumstances preclude processing the requests within the statutory time limit. Def.'s Mem. at 1. The Court agrees for the following reasons.

#### A. Exceptional Circumstances

##### 1. Requests and Resources

As previously noted, the plaintiff's requests disclosed approximately 72,000 potentially responsive documents. Def.'s Mem. at 11. The volume of the plaintiff's requests placed it into

the "large queue" category, with its processing scheduled to commence after the completion of

several earlier-filed requests.  Id. at 12.  In addition to the several "large queue" category requests

and the approximately 1,200 new FOIA requests received each month, Def.'s Mem. at 14, the

Record Section's depleted staff is also processing numerous other requests in other pending

litigation with court-imposed deadlines.  Def.'s First Stat. Rpt., Ex. 1 (Hardy Decl. III) at 10.  In

fact, two of those deadlines were secured by the plaintiff in pending litigation in unrelated cases.

Id.

        The plaintiff nonetheless insists that the Record Section's explanations do not amount to

exceptional circumstances because backlogged requests and administrative appeals are

predictable, and because litigation deadlines should not affect the processing of its request in a

timely manner.  Pl.'s Opp'n at 13.  The plaintiff correctly states that a predictable workload alone

does not qualify as an "exceptional" circumstance.  5 U.S.C. § 552(a)(6)(C)(ii).  Its argument in

this regard, however, misses the mark because it focuses solely on the Record Section's

workload.  It is not that exceptional circumstances exist solely because of the workload, but also

due to the depleted workforce available to address the workload.  As indicated by the FBI, the

relocation of its Record Section resulted in a significant loss of senior personnel and the section

is now operating at more than one hundred positions below its funded staffing level.  Def.'s

Mem. at 23.  This reduction in staff has understandably increased the burden on the experienced

employees who remain.  Moreover, the Record Section's workload has increased at the same

time it experienced the decrease in its resources, id. at 24, and logically, a finite pool of human

resources can only accomplish so much.  See Elect. Frontier Found., 517 F. Supp. 2d at 119

(stating that the Record Section "has been 'deluged with a volume of requests for information

vastly in excess of that anticipated by Congress,' and that its 'existing resources are inadequate to

deal with the volume of such requests within the time limits'" (quoting <u>Open America</u>, 547 F.2d at 616.)); <u>see also</u> <u>Open America</u>, 547 F.2d at 613 (discussing an FBI backlog of more than 5,000 requests that had to be processed by less than 200 employees and finding the number of requests had been unforeseen by Congress); <u>Edmonds v. FBI</u>, No. 02-1294, 2002 WL 32539613, at *2 (D.D.C. Dec. 3, 2002) (finding that 1,300 new requests each month, in addition to the backlog of pending requests, administrative appeals and litigation constituted exceptional circumstances).

On the record before the Court in this case, the Court finds that the enormous workload confronting the Record Section, coupled with the diminished number of employees it has to address the volume of requests it has to process, demonstrates exceptional circumstances. <u>See</u> <u>Open America</u>, 547 F.2d at 616 ("existing resources are inadequate to deal with the volume"). The defendant has therefore satisfied the first and second elements required for an <u>Open America</u> stay.

### 2. Due Diligence and Reasonable Progress

The Court further finds that the defendant has demonstrated both due diligence in processing the FOIA requests submitted to it and is making reasonable progress in reducing its backlog of the requests. Despite the short-term setbacks caused by problems brought on by the Record Section's relocation, the FBI expects that once its Record Section is fully operational in its new facility, the processing time of FOIA requests will decrease by forty percent. Def.'s Mem. at 23. Moreover, in its effort to reduce the processing time, the FBI has developed electronic processing techniques that have replaced several manual processing procedures, <u>id.</u> at 13-14, and is aggressively recruiting new Record Section employees, <u>id.</u> at 23. As a result of the steps taken thus far, both the number of backlogged requests and the median number of days to process requests have been reduced over the past ten years. <u>Id.</u> at 27. The FBI's goal is to

ultimately streamline the entire FOIA processing system.  Id. at 23.  Its new computer software,

the Record Section's new facility and the current backlog reduction all demonstrate that the FBI

is both exercising due diligence and making reasonable progress toward achieving the goal of

reducing the processing time of FOIA requests.  Illustrative of the progress the FBI has made is

the current status of the plaintiff's requests.[11]  As of January 2008, the Record Section has

processed more than 21,000 of the 72,000 pages found to be potentially responsive to the

requests and released nearly 750 pages to the plaintiff.  Def.'s First Stat. Rpt., Ex. 1 (Hardy Decl.

III) at 5-6.

        Based on the record before the Court, it must conclude that the Record Section is

exercising due diligence in processing the FOIA requests it receives but that exceptional

circumstances are precluding it from processing the plaintiff's requests within the statutorily

allotted time limit.  An Open America stay is therefore warranted.[12]

    B.  Length of the Stay Requested

        The crux of the plaintiff's opposition to the defendant's motion appears to be with the

length of the stay requested, not so much to the stay itself.  The defendant requested a stay of 71

months from the filing of its motion – 3 months for the requests to move to the head of the

applicable queue and 68 months to review the 72,000 potentially responsive pages.  Def.'s Mem.

---

[11]  The plaintiff ineffectively argues that due diligence was not exercised from the outset in the processing
of its requests because locating the 72,000 pages of potentially responsive documents took nearly eight months.  This
argument lacks merit because the plaintiff's requests were processed in accordance with the first-in first-out
procedure that has been held to be in compliance with the requirements of the FOIA.  See, e.g., Summers, 925 F.2d
at 452 ("the agency (FBI) was exercising due diligence in processing requests on a first in, first out basis" (citing
Open America, 547 F.2d at 616)); Elec. Frontier Found., 517 F. Supp. 2d at 120 ("the FBI's standard first-in/first-out
procedure . . . sufficiently establishes that the FBI has exercised due diligence").

[12]  The difficulties occasioned by the Record Section's relocation warranted an Open America stay in
another FOIA case filed against the FBI by the plaintiff.  See Elec. Frontier Found., 517 F. Supp. 2d at 118-21
(discussing the Record Section's personnel shortage and the steps being taken by the FBI to improve the processing
of the its FOIA requests, and granting a stay of one year to process 20,000 pages).

at 2.  Since the filing of the defendant's motion, however, the FBI agreed to expedite the

plaintiff's requests and to release documents periodically once it is determined that the plaintiff is

entitled to them.  Def.'s First Stat. Rpt., Ex. 1 (Hardy Decl. III) at 3.  To date, all of the

potentially responsive documents have been reviewed by the Record Section and only a limited

number have been deemed responsive to the plaintiff's requests and therefore released.

Defendant's May 27, 2008 Status Report (Def.'s Second Stat. Rpt.), Attach. (Fourth Declaration

of David M. Hardy) (Hardy Decl. IV) at 5-6.  And, only a nominal number of these documents

found to be responsive await further review to determine whether the information contained in

those documents is exempt or can also be released.[13]  Id. at 6-7.

        In light of the progress already made in processing the plaintiff's FOIA requests, it seems

quite likely that the process will be completed well before February 2013, the date initially

requested by the defendant for the termination of the stay.  In fact, the defendant has now

represented that it expects to have completed is review of the plaintiff's requests by June 9, 2008.

Id. at 7.  The Court will therefore grant the defendant's request for an Open America stay only

until August 1, 2008.

### IV.  Conclusion

        In summary, consideration of the four factors courts have employed in assessing a request

for an Open America stay leads to the conclusion that the defendant has satisfied all four factors.

Accordingly, for the foregoing reasons, the defendant's Motion for an Open America stay is

granted.[14]  However, the stay will only remain in effect until August 1, 2008.

---

        [13]  The FBI expects that its next release will make available to the plaintiff all information it deems not
exempt and responsive to the plaintiff's FOIA requests.  Def.'s Second Stat. Rpt., Attach. (Hardy Decl. IV) at 7.

        [14]  The Court notes that the plaintiff may petition the Court for interim relief while the stay is in effect if it
believes that the FBI has wrongfully withheld information responsive to its FOIA requests.

**SO ORDERED** on this 30th day of June, 2008.[15]


REGGIE B. WALTON

United States District Judge

---

[15] This Memorandum Opinion accompanies an Amended Order that amends an Order issued by this Court on March 28, 2008. [D.E. #18].